**DLA PIPER LLP (US)**
Anthony Todaro, OSB No. 150714
*anthony.todaro@us.dlapiper.com*
David Freeburg, OSB No. 180984
*david.freeburg@us.dlapiper.com*
701 Fifth Avenue, Suite 6900
Seattle, Washington 98104-7029
Tel. (206) 839-4800

*Counsel for Defendant Japan NuScale Innovation, LLC*

**LARKINS VACURA KAYSER LLP**
Christopher Kayser, OSB No. 984244
*cjkayser@lvklaw.com*
121 SW Morrison St., Ste. 700
Portland, Oregon 97217
Tel. (503) 222-4424

**VEDDER PRICE P.C.**
Thomas Cimino, admitted pro hac vice
*tcimino@vedderprice.com*
222 N. LaSalle Street, Suite 2300
Chicago, Illinois 60601
Tel. (312) 609-7784

*Counsel for Defendant Sargent & Lundy NuHoldings, LLC*

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| JOHN J. SURINA, JR., trustee of the Elizabeth Sophia Surina Trust and Nicholas William Surina Trust; BRUCE LANDREY, an individual; PAUL LORENZINI, an individual; RICHARD SANDVIK, an individual; EDWARD G. WALLACE, an individual; JACK A. BAILEY, an individual; GARY CARL BARBOUR, an individual; PAUL D. BENNETT, an individual; JAMES E. CARTER, an individual; CHARLES MARCINKIEWICZ, trustee of the Charles & Kathleen Marcinkiewicz Trust; MICHAEL S. KCGOUGH, an individual; CHRISTOPHER RUNCKEL, an individual; and JOE | Civil Action No.: 3:22-cv-01410 **DEFENDANTS JAPAN NUSCALE INNOVATION, LLC AND SARGENT & LUNDY NUHOLDINGS, LLC'S MOTION TO DISMISS** |

CLAYTON TURNAGE, an individual; on behalf of themselves and all others similarly situated,

        Plaintiffs,

v.

NUSCALE POWER, LLC, an Oregon limited liability company; FLUOR ENTERPRISES, INC., a California corporation; JAPAN NUSCALE INNOVATION, LLC, a Delaware limited liability company; SARGENT & LUNDY NUHOLDINGS, LLC, an Illinois limited liability company,

        Defendants.

## <u>TABLE OF CONTENTS</u>

LOCAL RULE 7-1 CERTIFICATION ........................................................................ 1

MOTION.................................................................................................................... 1

MEMORANDUM OF LAW ...................................................................................... 1

    I.     INTRODUCTION ................................................................................ 1

    II.    STATEMENT OF FACTS .................................................................... 4

        A.     JNI and S&L had limited power—and limited obligations—as members of the LLC. ..................................................................4

        B.     Plaintiffs waited until after the Merger closed before filing this challenge to the administration of Company votes.....................................8

    III.   ARGUMENT .......................................................................................... 8

        A.     The Complaint does not allege a cognizable breach of contract theory against JNI and S&L in Count 4.......................................................9

        B.     The Complaint does not identify a breach of the duty of good faith and fair dealing in Count 3........................................................12

        C.     The Complaint does not state a claim for unjust enrichment or the remedies of a constructive trust or equitable lien in Count 2. ...................14

        D.     The Complaint does not establish the requirements of a declaratory judgment in Count 1................................................................16

        E.     Plaintiff Bailey was not a NuScale member, so he lacks standing to challenge the amendment of the 5th Operating Agreement......................18

    IV.   CONCLUSION.................................................................................... 19

# TABLE OF AUTHORITIES

Cases                                                                    Page(s)

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................... 8, 9

*Bagley v. Mt. Bachelor, Inc.*,
  356 Or. 543 (2014) ....................................................................................... 15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................... 8, 9

*Bernards v. Summit Real Est. Mgmt., Inc.*,
  229 Or. App. 357 (2009) .............................................................................. 12

*Bocock v. INNOVATE Corp.*,
  2022 WL 15800273 (Del. Ch. Oct. 28, 2022) ............................................. 18

*Daly v. Yessne*,
  131 Cal. App. 4th 52 (2005) ......................................................................... 18

*Davis v. Pac. Saw & Knife Co.*,
  2008 WL 4319981 (D. Or. Sept. 16, 2008) ................................................. 13

*Exxon Mobil Corp. v. New W. Petroleum, LP*,
  369 F. App'x 805 (9th Cir. 2010) ........................................................... 16, 18

*Fleshman v. Wells Fargo Bank, N.A.*,
  2015 WL 4488163 (D. Or. July 23, 2015)................................................... 16

*Helicopter Transp. Servs., LLC v. Sikorsky Aircraft Corp.*,
  448 F. Supp. 3d 1127 (D. Or. 2020) ............................................................ 12

*In re Gen. Motors LLC Ignition Switch Litig.*,
  339 F. Supp. 3d 262 (S.D.N.Y. 2018)......................................................... 14

*In re Woodfield*,
  602 B.R. 747 (Bankr. D. Or. 2019).............................................................. 10

*Indus. Ins. Co. v. HR Staffing, Inc.*,
  2014 WL 4983671 (D. Or. Oct. 1, 2014)..................................................... 14

*Ionian Corp. v. Country Mut. Ins. Co.*,
  2012 WL 707072 (D. Or. Mar. 5, 2012)...................................................... 15

*Jensen v. Quality Loan Serv. Corp.*,
  702 F. Supp. 2d 1183 (E.D. Cal. 2010)........................................................ 16

*Larisa's Home Care, LLC v. Nichols-Shields*,
  362 Or. 115 (2017)........................................................................................ 15

*LaTulippe v. Harder*,
  574 F. Supp. 3d 870 (D. Or. 2021) .............................................................. 16

*Lawrence v. Kuenhold*,
  271 F. App'x 763 (10th Cir. 2008) ............................................................... 17

*Nguyen v. Madison Mgmt. Servs., LLC*,
  2016 WL 4708535 (D. Or. Sept. 7, 2016) ................................................... 12

*Planet Ins. Co. v. Mead Reinsurance Corp.*,
  789 F.2d 668 (9th Cir. 1986) ....................................................................... 17

*Public Affairs Associates v. Rickover*,
  369 U.S. 111, 82 S.Ct. 580 (1962)............................................................... 16

*Rapacki v. Chase Home Fin. LLC*,
   797 F. Supp. 2d 1085 (D. Or. 2011) ................................................. 12

*Schafer v. Soderberg & Schafer*,
   196 Ohio App. 3d 458 (2011) ........................................................ 13

*Sellassie v. Inesscents Aromatic Botanicals, LLC*,
   2020 WL 5414594 (D. Or. July 28, 2020) ...................................... 9

*Singh v. Shellpoint Mortg. Servicing*,
   2019 WL 5902111 (D. Or. Nov. 11, 2019) ..................................... 15

*Talk Radio Network Enterprises v. Cumulus Media Inc.*,
   271 F. Supp. 3d 1195 (D. Or. 2017) ............................................... 14

*Tupper v. Roan*,
   349 Or. 211 (2010) ....................................................................... 15

*United States ex rel. Doughty v. Oregon Health & Scis. Univ.*,
   2017 WL 1364208 (D. Or. Apr. 11, 2017) ..................................... 14

*United States v. Howard*,
   381 F.3d 873 (9th Cir. 2004) ......................................................... 8

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ......................................................... 2

*United States v. State of Wash.*,
   759 F.2d 1353 (9th Cir. 1985) ....................................................... 16

*United States v. Wilson*,
   631 F.2d 118 (9th Cir. 1980) ......................................................... 8

*Vesta Corp. v. Amdocs Mgmt. Ltd.*,
   129 F. Supp. 3d 1012 (D. Or. 2015) ............................................... 2

*W. Prop. Holdings, LLC v. Aequitas Cap. Mgmt., Inc.*,
   284 Or. App. 316 (2017) ............................................................... 12

*Walters v. Vitamin Shoppe Indus., Inc.*,
   701 F. App'x 667 (9th Cir. 2017) .................................................. 14

## LOCAL RULE 7-1 CERTIFICATION

Pursuant to Local Rule 7-1(a), counsel for Defendants Japan NuScale Innovation, LLC ("JNI") and Sargent & Lundy NuHoldings, LLC ("S&L") certify that they have made good faith efforts to confer with Plaintiffs' counsel concerning the nature and grounds for this Motion but they were unable to resolve this dispute.

## MOTION

Pursuant to Federal Rule of Civil Procedure 12(b)(6), and for the reasons set forth in the Memorandum of Law below, Defendants JNI and S&L (collectively, "Movants") hereby request the Court dismiss all of the Complaint's claims against JNI and S&L, with prejudice.

## MEMORANDUM OF LAW

## I.     INTRODUCTION

This case concerns the merger of Defendant NuScale Power LLC ("NuScale" or the "Company") with Spring Valley Acquisition Company, a special purpose acquisition company ("SPAC") now known as NuScale Power Corp (the "Merger"). The Merger was approved by a majority of NuScale's unitholders and completed on May 2, 2022 (more than four months before Plaintiffs filed this action). As part of the transaction, NuScale amended its 5th Operating Agreement to (i) eliminate the distinction between preferred and common units; (ii) convert the Company's preferred units into common units at a ratio of approximately 1.58 common units for every preferred unit; and (iii) create a new class of units for all owners that eventually could be exchanged for shares in the post-merger public company.

As explained in NuScale's separately-filed motion to dismiss, Dkt. No. 18 ("NuScale's Motion," which JNI and S&L incorporate by reference and join[1]), Plaintiffs, who held common units and/or an option to acquire common units, allege that the preferred units should have been converted on a 1:1 ratio instead, and have brought this lawsuit seeking greater value for themselves. Plaintiffs' case rests entirely on the notion that the 5th Operating Agreement supposedly gave common unitholders a right to vote on any amendments to the operating agreement **as a separate class** with veto power over the Merger, but that they were deprived of this vote. But, that is simply incorrect. The operating agreement expressly provides that consent of common members as a separate class is **not** required for any amendments (i) "in connection with" (ii) "the issuance and/or creation" (iii) "of equity securities," *i.e.*, precisely the circumstance in the Merger. Declaration of Jacob Goldberg in Support of Defs.' Mot. to Dismiss, Dkt. No. 19 ("Goldberg Decl."), Ex. 1, 5th Operating Agreement § 14.3(aa).[2] For the reasons in NuScale's Motion, this fundamental flaw in Plaintiffs' theory requires dismissal of the Complaint's claims against every Defendant—including not just NuScale, but also Defendants JNI, S&L, and Fluor Enterprises, Inc. ("Fluor").

In addition, the claims asserted against JNI and S&L fail for other, legally independent reasons requiring dismissal as a matter of law. While the Complaint contests the amendment of

---

[1] Movants need not join NuScale's request for dismissal of Count 5 of the Complaint, as that Count is not directed against them.

[2] The Court may consider the 5th Operating Agreement when deciding this motion to dismiss because it forms the basis of Plaintiffs' breach of contract claim and is expressly incorporated by reference into the Complaint. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (Courts can consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice."); *see also* Defs.' Joint Notice of Incorporation by Reference & Request for Judicial Notice in Support of Motions to Dismiss, Dkt. No. 20. As a "matter[] of public record," the Court may also take judicial notice of "the merger" itself. *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 129 F. Supp. 3d 1012, 1021 (D. Or. 2015).

the 5th Operating Agreement as part of the Merger, it says almost nothing at all regarding JNI and S&L, who were preferred unitholders in the Company. The Complaint's only substantive allegation about these Defendants is that when NuScale asked whether members wished to amend the 5th Operating Agreement, JNI and S&L voted in favor. Compl. ¶¶ 32–33. Plaintiffs' claims—breach of contract (count 4), breach of the duty of good faith and fair dealing (count 3), unjust enrichment (count 2), and declaratory judgment (count 1)—all rest on their interpretation of Section 14.3(aa) of the 5th Operating Agreement. *See, e.g.*, Compl. ¶¶ 40–41, 84. But that provision imposes obligations only on the **Company**—not JNI or S&L. Goldberg Decl. Ex. 1, 5th Operating Agreement § 14.3(aa). Under the 5th Operating Agreement, JNI and S&L had the absolute right to vote for or against the Merger as they saw fit, with "sole and absolute discretion" to "exercise … [the] rights, powers or privileges" of membership, including the right to vote, in their own best interests. *Id.* § 14.8. Plaintiffs also agreed JNI and S&L would "not incur or be subject to any liability … to any other member" as a result. *Id.* Hence, exercising the right to vote does not give rise to any legitimate claim for relief.

In addition to the Complaint's flawed claim for breach of contract, Plaintiffs contend that JNI and S&L's votes in favor of the Merger violated the duty of good faith and fair dealing. But when entering into the 5th Operating Agreement, Plaintiffs expressly agreed that any other member's exercise of its rights under the agreement—including its voting rights—"**shall not be deemed to constitute a lack of good faith and fair dealing**." Goldberg Decl. Ex. 1, 5th Operating Agreement § 14.8 (a–c) (emphasis added). Plaintiffs cannot use the good faith and fair dealing doctrine to alter the express terms of the 5th Operating Agreement.

Similarly, because JNI and S&L's rights were set forth by contract, Plaintiffs cannot use an unjust enrichment claim to reallocate or alter the rights and obligations of the agreement.

Finally, Plaintiffs have not stated a claim for declaratory relief. Declaratory judgments are intended to **prevent** future harms—not describe rights regarding a merger six months after its closing.

For all these reasons, the Court should dismiss all of the Complaint's claims against JNI and S&L, with prejudice, as a matter of law.

## II.    STATEMENT OF FACTS

### A.    JNI and S&L had limited power—and limited obligations—as members of the LLC.

NuScale is an LLC with more than 110 members (as of the 5th Operating Agreement's last update on July 30, 2021), including 22 preferred unitholders and 89 common unitholders. Goldberg Decl. Ex. 1, 5th Operating Agreement at Schedule A; *see also* Compl. ¶ 58. Plaintiffs are 12 individuals who allegedly held common units and one individual who was not even a member of the LLC.[3]

On December 14, 2021, the Company announced a merger with a newly-formed subsidiary of a publicly traded SPAC named Spring Valley Acquisition Corp. (later renamed NuScale Power Corp.). Compl. ¶ 42. The Company's management requested unitholder approval for the Merger. *Id.* ¶ 44. A majority of NuScale's unitholders voted to approve the Merger, including amendment of the 5th Operating Agreement. *Id.*[4]

---

[3] Although Plaintiff Jack Bailey received an option grant under NuScale's equity incentive plan, he did not exercise any options or become a member before the Merger. Thus, according to his Unit Option Agreement, Bailey has "no rights as a unitholder." Goldberg Decl. Ex. 3, Equity Incentive Plan § 14 ("The Optionee … shall have no rights as a unitholder with respect to any common units until the date the Optionee … becomes the holder of record of those units."). His claims should be dismissed for this reason alone.

[4] Although the Complaint acknowledges only that a majority of preferred unitholders voted to approve the Merger, Compl. ¶¶ 31–33 & 44, the Company has far more preferred than common

JNI and S&L are holding companies that owned a minority of NuScale's preferred units before the Merger. Compl. ¶¶ 4, 12, 31, 42.[5] They did not have any involvement in soliciting, administering, or counting votes regarding NuScale's Merger. *Id.* The Complaint's only substantive allegation about these defendants is that they benefited from holding preferred units and "[o]n information and belief," they "voted in favor of the amendments at issue." Compl. ¶¶ 32–33.

Prior to the merger, NuScale was organized as a manager-managed limited liability company under ORS 63.130(2). The Company was run by a board of seven managers with exclusive control of NuScale's management. Goldberg Decl. Ex. 1, 5th Operating Agreement § 5.12.[6] During the events at issue in the Complaint, all seven of NuScale's board members were appointed by its majority unitholder, Fluor. Compl. ¶¶ 4, 12, 31. Thus, according to Plaintiffs' allegations, Fluor "had the ability to control the Company through its Board of Managers, having appointed all of those managers, and all of those managers being either current Fluor employees, former Fluor executives or former members of the board of directors of Fluor's parent corporation." Compl. ¶ 31.[7]

---

units, meaning a majority of the Company's units, overall, also approved the Merger. Goldberg Decl. Ex. 1, 5th Operating Agreement at Schedule A.

[5] As of the 5th Operating Agreement's last update, JNI owned just 4.7% of NuScale's preferred units, and S&L owned less than 1.1%. Goldberg Decl. Ex. 1, 5th Operating Agreement at Schedule A.

[6] As described in the 5th Operating Agreement, the Board had "all power and authority to manage, or to direct the management of, the business and affairs of and to make all decisions to be made by or on behalf of the Company. … No Manager may delegate to any other Person that Manager's rights and obligations to participate in and vote at any meeting of the Board." Goldberg Decl. Ex. 1, 5th Operating Agreement § 5.1.

[7] Members like JNI and S&L lacked any ability to bind the Company. *See, e.g*., Goldberg Decl. Ex. 1, 5th Operating Agreement § 6.2 ("**Lack of Authority**. No Member in its capacity as such has the authority or power to act for or on behalf of the Company in any manner or way, to bind

Recognizing that NuScale was a manager-managed LLC, Plaintiffs agreed that no member, including preferred unitholders such as JNI and S&L, would be liable for the decisions of Company management:

> **Duties; Limitation of Liability**. No Member shall owe any duty to the Company or the other Members solely by reason of being a Member. Except as otherwise provided by this Agreement or the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and no Member shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member.

Goldberg Decl. Ex. 1, 5th Operating Agreement § 6.1.

Plaintiffs also agreed, when entering the 5th Operating Agreement, that every other member had a contractual right to exercise membership rights, like voting, in the manner that was best for its own financial interests:

> Each Member recognizes, acknowledges and agrees that the other **Members have substantial financial interests in the Company to preserve** and that (a) each Member, in its **sole and absolute discretion**, may exercise or refrain from exercising any rights, powers or privileges that such Member, in its capacity as a Member, may have pursuant to this Agreement or at law or in equity, (b) exercising or refraining from exercising such rights, powers or privileges **shall not be deemed to constitute a lack of good faith or unfair dealing**, and (c) such Member **shall not incur or be subject to any liability** or obligation to any other Member or any other Person, by reason of exercising or refraining from exercising any such rights, powers or privileges.

*Id*. § 14.8 ("Waivers; Exercise of Contractual Rights.") (emphasis added).

Finally, Plaintiffs agreed that no member would be liable to any other member for any act or omission in connection with the acquisition of units in the Company:

> To the fullest extent permitted by the Act, each Member agrees that **no Member … shall be liable to any other Member** for any action heretofore or hereafter

---

the Company, or do any act that would be (or could be construed as) binding on the Company, in any manner or way …").

taken or omitted to be taken by any of them **in connection with their** purchase or **acquisition of any Units**.

*Id*. § 14.9 ("Exculpation Among Members.") (emphasis added).

Plaintiffs contend that, simply by voting, JNI and S&L violated Section 14.3(aa) of the 5th Operating Agreement, which states:

> Subject to the right of the Company pursuant to Section 3.1(d) to amend this Agreement in connection with the creation and/or issuance of Equity Securities in accordance with the terms of hereof, **this Agreement may be amended or modified**, or any provision waived, only with the written consent of (a) the Members holding a majority of the votes of the issued and outstanding Common Units and Preferred Units consenting together as a single class (on an As-Converted Basis) and (b) the Members holding a majority of the Preferred Units, consenting as a separate class provided however, that . . . (aa) any amendment to Section 3.1(g), 4.1(a)(iii), 4.1(a)(v), or 12.2(c), or this clause (aa) … (other than any amendment to such Sections and clause (aa) pursuant to Section 3.1(d) in connection with the creation and/or issuance of Equity Securities), shall also require the written consent of the Members holding a majority of the Common Units consenting as a separate class.

Goldberg Decl. Ex. 1, 5th Operating Agreement § 14.3(aa) (emphasis added).[8]  However, this provision does not impose any contractual obligations **on JNI or S&L**.  Instead, it sets forth the obligation of **the Company itself** to grant voting rights to unitholders under certain circumstances.  Nonetheless, no member can have liability for responding to the Company's request for a member vote.

---

[8] As NuScale's Motion explains, Plaintiffs have misinterpreted Section 14.3(aa), which does not require NuScale to count votes from common unitholders as a separate class with veto power over results.  For example, Section 14.3(aa) does not apply to amendments "in connection with the creation and/or issuance of Equity Securities"—like NuScale's issuance of new equity securities in the de-SPAC merger.  Goldberg Decl. Ex. 1, 5th Operating Agreement § 14.3(aa).  And, the rights in Section 14.3(aa) are entirely "[s]ubject to the right of the Company pursuant to Section 3.1(d) to amend this Agreement in connection with the creation and/or issuance of Equity Securities in accordance with the terms hereof."  *Id*.

**B.** **Plaintiffs waited until after the Merger closed before filing this challenge to the administration of Company votes.**

Five Plaintiffs previously pursued nearly identical theories in a pre-Merger lawsuit against the Company—but not any other Defendants—in Oregon Circuit Court styled *Landrey v. NuScale Power, LLC*, No. 22-cv-13859 (Washington Cty.).[9]  In their April 25, 2022, complaint, these Plaintiffs asked the court to issue an injunction preventing the Company from closing the Merger without "approval of a majority vote [of] the Common Members consenting as a separate class." Goldberg Decl. Ex. 5, *Landrey*, Compl. at 5 (Apr. 25, 2022).  But these Plaintiffs never actually moved for relief, and they ultimately dismissed their own claims, without prejudice.  Goldberg Decl. Ex. 6, *Landrey*, Judgment (Oct. 6, 2022).

Over four months after the Merger, on September 19, 2022, Plaintiffs filed this new Complaint, asserting new claims not just against the Company, but also against JNI, S&L, and Fluor.

## III. <u>ARGUMENT</u>

Plaintiffs allege that Movants did nothing other than vote in favor of the Amendments to the 5th Operating Agreement.  This does not state a valid claim for relief.  The Complaint simply does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  While a court must draw all reasonable inferences in favor of the non-moving party, Plaintiffs' "factual allegations must be enough to raise a right to relief above the speculative level," *id*. at 555, and the pleading is not sufficient "if it tenders 'naked

---

[9] The "[C]ourt may take judicial notice of … court records in another case."  *United States v. Howard*, 381 F.3d 873, 876 (9th Cir. 2004) (citing *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980)).

assertions' devoid of further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Because the Complaint does not identify any actionable claim against JNI and S&L, the Court should dismiss Plaintiffs' claims against these Defendants, as a matter of law, under Rule 12(b)(6).

## A. The Complaint does not allege a cognizable breach of contract theory against JNI and S&L in Count 4.

Movants incorporate by reference the arguments in NuScale's separate motion to dismiss, which correctly explains that NuScale's approval of the Merger did not violate any provisions of the 5th Operating Agreement. The Complaint's breach of contract claim against JNI and S&L also fails because Section 14.3(aa) does not impose contractual obligations on either Defendant and because contractual exculpation clauses protect their right to participate in a member vote.

### a) *The Complaint does not allege that JNI or S&L breached any contractual duties of those Defendants.*

Regardless of whether Plaintiffs can state a breach of contract claim against **NuScale**, the Complaint fails to allege that **JNI and S&L** breached the 5th Operating Agreement. "A claim for breach of contract under Oregon law must allege (1) the existence of a contract, (2) the relevant terms of the contract, (3) plaintiff's full performance and lack of breach, and (4) **defendant's** breach resulting in damage to plaintiff." *Sellassie v. Inesscents Aromatic Botanicals, LLC*, 2020 WL 5414594, at *3 (D. Or. July 28, 2020) (emphasis added).[10] Here, Plaintiffs allege only that JNI and S&L voted in favor of an amendment to the 5th Operating Agreement. But as noted above, that very agreement allows all members to exercise their own rights as members, including voting

---

[10] The 5th Operating Agreement is subject to Oregon law. Goldberg Decl. Ex. 1, 5th Operating Agreement § 14.11 ("This Agreement shall be governed by, and construed in accordance with, the laws of the state of Oregon, regardless of the laws that might otherwise govern under applicable conflict of laws principles.").

and acquiring units without any liability to any other member. Goldberg Decl. Ex. 1, 5th Operating Agreement §§ 6.1, 14.8 & 14.9. Given these unequivocal rights, Plaintiffs have failed to allege how JNI or S&L could be responsible for any breach of contract.

Plaintiffs' theory relies entirely on their interpretation of Section 14.3(aa) of the 5th Operating Agreement. Compl. ¶¶ 40–41 & 84.[11] However, that provision does not create any contractual duties from JNI and S&L to Plaintiffs, and without a duty, there can be no breach. The plain language of Section 14.3(aa) simply sets forth how the 5th Operating Agreement "may be amended or modified" by the Company, without imposing any duty on individual members. Goldberg Decl. Ex. 1, 5th Operating Agreement § 14.3(aa). The 5th Operating Agreement is also clear that **<u>the Company's</u>** contractual obligations are owed by the Company itself. Goldberg Decl. Ex. 1, 5th Operating Agreement § 6.1 ("[N]o Member shall be obligated personally for any … obligation … of the Company solely by reason of being a Member.").[12] By Plaintiffs' logic, every NuScale member (including common and preferred unitholders alike) would be liable for breach of contract. Goldberg Decl. Ex. 1, 5th Operating Agreement at Schedule A. That cannot be the

---

[11] Although the Complaint claims NuScale wrongly amended Sections 3.1(g), 4.1(a)(iii), 4.1(a)(iv), 4.1(a)(v), 12.2(c), and 14.3(aa) of the 5th Operating Agreement, it does not allege that any defendant actually breached those provisions. *See, e.g.*, Compl. ¶¶ 41, 45. Thus, they are irrelevant to Plaintiffs' breach of contract claim against JNI and S&L.

[12] Indeed, the 5th Operating Agreement is clear that JNI and S&L lack any ability to control whether the Company's Management count separate classes of membership votes. *See* Goldberg Decl. Ex. 1, 5th Operating Agreement § 5.1 (providing the Board "all power and authority to manage, or to direct the management of, the business and affairs of and to make all decisions to be made by or on behalf of the Company"); *see also, e.g., In re Woodfield*, 602 B.R. 747, 756–57 (Bankr. D. Or. 2019) ("[I]n a manager-managed LLC … members have no management rights other than to vote on the selection of the manager(s).").

case.[13]  Plaintiffs have not identified a cognizable theory of how JNI and S&L could have breached the 5th Operating Agreement.

<b>b)</b>      *JNI and S&L are protected by contractual exculpation clauses.*

The claims against JNI and S&L are also squarely precluded by the 5th Operating Agreement's exculpation clauses.  In the 5th Operating Agreement, Plaintiffs expressly agreed that other members, including JNI and S&L, would **<u>not</u>** be liable for exercising their right to vote.  Specifically, Section 14.8 of the 5th Operating Agreement provides that unitholders—including JNI and S&L—would have "sole and absolute discretion" to "exercise … [the] rights, powers or privileges" of membership, including the right to vote, in their own best interests.  Goldberg Decl. Ex. 1, 5th Operating Agreement § 14.8.  Plaintiffs also agreed JNI and S&L would "not incur or be subject to any liability … to any other member" as a result.  *Id.*; *see also id.* § 6.1 ("[N]o Member shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member.").  For this reason alone, JNI and S&L cannot be held liable for breach of contract simply for "vot[ing] in favor of the amendments at issue."  Compl. ¶¶ 32–33.

In addition, Section 14.9 of the 5th Operating Agreement provides that "no Member … shall be liable to any other Member for any action heretofore or hereafter taken or omitted to be taken by any of them in connection with their purchase or acquisition of any Units."  Goldberg Decl. Ex. 1, 5th Operating Agreement § 14.9.  This exculpation clause bars Plaintiffs' claims

---

[13] *See, e.g.*, ORS 63.165(1) ("[T]he … obligations … of a limited liability company, whether arising in contract, tort or otherwise, are solely the … obligations … of the limited liability company," and "[a] member or manager is not personally liable for a[n] … obligation … of the limited liability company solely by reason of being or acting as a member or manager."); ORS 63.165(2) ("The failure of a limited liability company to observe the … requirements relating to … management of its business is not a ground for imposing personal liability on the members … for liabilities of the limited liability company.").

against JNI and S&L, which explicitly rest on the notion that JNI and S&L received "a substantially increased number of Common Units and, ultimately, a substantially increased number of Class B units" during the Merger.  Compl. ¶ 48.[14]  JNI and S&L's actions fall squarely within these exculpation clauses, and the breach of contract claim against them should be dismissed.

## B. The Complaint does not identify a breach of the duty of good faith and fair dealing in Count 3.

NuScale's Motion correctly explains that the Court should dismiss Plaintiffs' good faith and fair dealing claim because this duty cannot "be construed in a way that changes or inserts terms into a contract."  *W. Prop. Holdings, LLC v. Aequitas Cap. Mgmt., Inc.*, 284 Or. App. 316, 324–25 (2017) (quotation omitted); *see also Helicopter Transp. Servs., LLC v. Sikorsky Aircraft Corp.*, 448 F. Supp. 3d 1127, 1140 (D. Or. 2020) ("The duty of good faith … may not vary the substantive terms of a bargain, nor provide a remedy for an unpleasantly motivated act that is expressly permitted by the contract.") (quotations omitted).  The Court should dismiss the good faith and fair dealing claim against JNI and S&L for this reason and two other, independent reasons.

As a threshold matter, the Complaint alleges all four Defendants violated the duty of good faith and fair dealing under three separate contracts, including two to which JNI and S&L were not even parties:  the Unit Option Agreements and Option Plan.  Compl. ¶¶ 75–80 (asserting good faith and fair dealing claims "against all Defendants" under "[t]he 5th Operating Agreement, Unit Option Agreements, and Option Plan").  As a matter of hornbook law, a defendant cannot breach

---

[14] *See, e.g., Bernards v. Summit Real Est. Mgmt., Inc.*, 229 Or. App. 357, 364 (2009); ORS 63.160 ("The articles of organization or any operating agreement … **may eliminate or limit the liability of a member** … to the limited liability company or its members for damages from … acts or omissions ...") (emphasis added).

the implied covenant of good faith and fair dealing under a contract it did not sign.[15]  Thus, the

Court should dismiss Plaintiffs' attempt to hold Movants liable for breaching a duty of good faith

and fair dealing under the Unit Option Agreements and Option Plan, regardless of any other

agreement.[16]

Nor can Plaintiffs establish a good faith and fair dealing claim under the 5th Operating

Agreement.  Like the remainder of the Complaint, Plaintiffs' good faith and fair dealing claim

relies on their theory that JNI and S&L should be liable simply because they voted to amend the

5th Operating Agreement.  Compl. ¶¶ 32–33.  However, the 5th Operating Agreement expressly

recognized that every member, including JNI and S&L, has the right to pursue its own "financial

interests in the Company," and that exercising membership rights like voting "shall **not** be deemed

to constitute a lack of good faith or unfair dealing."   Goldberg Decl. Ex. 1, 5th Operating

Agreement § 14.8 (a–c);[17] *see also Schafer v. Soderberg & Schafer*, 196 Ohio App. 3d 458,

475 (2011) ("[A] shareholder in a limited-liability company does not act in bad faith simply by

---

[15] *See, e.g., Nguyen v. Madison Mgmt. Servs., LLC*, 2016 WL 4708535, at *8 (D. Or. Sept. 7, 2016)
("A claim for breach of the implied contractual obligation of good faith and fair dealing requires
the existence of a contract between the parties."); *Rapacki v. Chase Home Fin. LLC*, 797 F. Supp.
2d 1085, 1091 (D. Or. 2011) (finding the defendant "is not a party to the Deed of Trust or the
underlying note and thus, plaintiff may not pursue an implied good faith claim against NWTS");
*Davis v. Pac. Saw & Knife Co.*, 2008 WL 4319981, at *2 (D. Or. Sept. 16, 2008) ("In the absence
of a contract between herself and Pacific Saw, Ms. Davis cannot assert a claim for breach of the
covenant of good faith and fair dealing.").

[16] The same logic requires dismissal of the good faith and fair dealing claim by Plaintiff Bailey,
who is not a party to **any** agreement with JNI or S&L—not even the 5th Operating Agreement.

[17] Oregon law allows LLC members to define the scope of good faith and fair dealing.
ORS 63.155(10)(c) ("[T]he articles of organization or an operating agreement may determine the
standards by which performance of the obligation of good faith and fair dealing is to be measured,
if the standards are not unconscionable.").

voting [its] shares.") (citation omitted).  For all of these reasons, Plaintiffs cannot sustain a good faith and fair dealing claim against JNI and S&L.

### C.    The Complaint does not state a claim for unjust enrichment or the remedies of a constructive trust or equitable lien in Count 2.

Plaintiffs have failed to state a valid claim for unjust enrichment, including the remedies of a constructive trust or equitable lien.  The Complaint alleges that JNI and S&L "received surplus Common Units and publicly traded shares, with substantial value," and asks the Court "to disgorge the amounts by which they have been unjustly enriched."  Compl. ¶¶ 70–73.  This claim fails for several related reasons.

*First*, "[u]nder Oregon law, once a court determines that a valid contract exists, an unjust enrichment claim must fail."  *In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262, 339 (S.D.N.Y. 2018) (quoting *Walters v. Vitamin Shoppe Indus., Inc.*, 701 F. App'x 667, 669 (9th Cir. 2017); *see also United States ex rel. Doughty v. Oregon Health & Scis. Univ.*, 2017 WL 1364208, at *7 (D. Or. Apr. 11, 2017) (dismissing unjust enrichment claim because it "ar[o]se from the express contracts the government alleged in its Complaint"); *Com. & Indus. Ins. Co. v. HR Staffing, Inc.*, 2014 WL 4983671, at *3 (D. Or. Oct. 1, 2014) ("A party cannot recover for unjust enrichment if there is a legally enforceable contract between the parties.").  Here, Plaintiffs acknowledge that the 5th Operating Agreement sets out the respective rights of (i) Plaintiffs, (ii) other unitholders (including JNI and S&L), and (iii) the Company, on the matters at issue.  An unjust enrichment claim cannot be used to alter rights and obligations among parties to a written agreement.[18]

---

[18] Although Plaintiff Bailey was not a party to the 5th Operating Agreement, he was also not even a unitholder, and thus lacks standing to assert claims based on the amendment of that agreement. *See* Section III.A.E, *below*.

***Second***, for the reasons discussed above, the exculpation clauses in the 5th Operating Agreement preclude Plaintiffs' contract claims. Plaintiffs cannot evade this result merely by pleading them in unjust enrichment instead. *See Talk Radio Network Enterprises v. Cumulus Media Inc*., 271 F. Supp. 3d 1195, 1215 (D. Or. 2017) (denying good faith and fair dealing claim because "[t]he right to contract privately is part of the liberty of citizenship, and an important office of the courts is to enforce contractual rights and obligations.") (quoting *Bagley v. Mt. Bachelor, Inc*., 356 Or. 543, 551 (2014)).

***Third***, JNI and S&L simply voted their units. They are not alleged to have taken any wrongful acts and, for the reasons discussed *supra*, the 5th Operating Agreement does not impose on JNI and S&L any obligations with respect to the amendments at issue (those obligations, whatever they may be, lie with the Company). Unjust enrichment claims require courts to "examine the established legal categories of unjust enrichment as reflected in Oregon case law and other authorities to determine whether any particular enrichment is unjust." *Larisa's Home Care, LLC v. Nichols-Shields*, 362 Or. 115, 132 (2017). "[T]he substantive question for unjust enrichment is whether the defendant is unjustly enriched by legal standards," and "not simply 'unjust' because you as a judge, scholar, or lawyer might think so." *Id*. (quotations omitted). But there is "nothing unjust or improper" in voting.

The Complaint's constructive trust and equitable lien theories require no separate analysis, because these are merely remedies for unjust enrichment, rather than standalone claims. *See, e.g., Ionian Corp. v. Country Mut. Ins. Co*., 2012 WL 707072, at *5 (D. Or. Mar. 5, 2012) ("[A] constructive trust or equitable lien is not a stand-alone claim"); *Tupper v. Roan*, 349 Or. 211, 219–20 (2010) (even "[w]hen the law employs a constructive trust, the doctrine of unjust enrichment

governs generally the substantive rights of the parties.") (citation omitted). Thus, the Complaint's unjust enrichment claim should be dismissed.

### D. The Complaint does not establish the requirements of a declaratory judgment in Count 1.

Plaintiffs' declaratory judgment claim requires dismissal because it is entirely dependent on, and duplicative of, the Complaint's claim for breach of contract. *See, e.g., Singh v. Shellpoint Mortg. Servicing*, 2019 WL 5902111, at *3 (D. Or. Nov. 11, 2019) ("A separate declaratory relief claim should not be used ... to determine identical issues subsumed within other claims.") (quoting *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1189 (E.D. Cal. 2010)). The Complaint seeks a declaratory judgment "providing that Defendants could not (a) enact and implement the 6th Operating Agreement without the consent of a majority of the holders of Common Units, voting as a class, and/or (b) authorize and implement the Restructuring alleged herein without the consent of a majority of the holders of Common Units, voting as a class." Compl. ¶ 68. This request is not a proper use of this Court's discretion under the Declaratory Judgment Act.

 "The decision to grant declaratory relief is a matter of discretion" entrusted to the sound judgment of the District Court. *United States v. State of Wash.*, 759 F.2d 1353, 1356 (9th Cir. 1985). "The purpose of a declaratory judgment is to set controversies at rest before they cause harm to the plaintiff, not to remedy harms that have already occurred." *Fleshman v. Wells Fargo Bank, N.A.*, 2015 WL 4488163, at *13 (D. Or. July 23, 2015) (quotation omitted). Thus, the Declaratory Judgment Act "gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Public Affairs Associates v. Rickover*, 369 U.S. 111, 112, 82 S.Ct. 580, 581–82 (1962). "[D]istrict courts may refuse to exercise their discretion where the declaratory action will not serve a useful purpose in clarifying the legal relations at issue." *Exxon Mobil Corp. v. New W. Petroleum, LP*, 369 F. App'x 805, 808 (9th Cir. 2010) (quotation omitted).

In this instance, Plaintiffs' declaratory judgment claim does not qualify for discretionary relief because there is no useful purpose in a new declaration about the Merger long after the closing. A "declaration about the legality of Defendant's past conduct" is not a proper basis for declaratory relief. *Fleshman*, 2015 WL 4488163, at *14; *see also LaTulippe v. Harder*, 574 F. Supp. 3d 870, 884 (D. Or. 2021) "[A] declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act.") (quoting *Lawrence v. Kuenhold*, 271 F. App'x 763, 766 (10th Cir. 2008)).

Likewise, "a district court abuses its discretion by rendering a declaratory judgment that fails to establish legal rights and duties with precision." *Planet Ins. Co. v. Mead Reinsurance Corp.*, 789 F.2d 668, 670 (9th Cir. 1986). In this instance, approval of the 6th Operating Agreement was a key component of the Merger and a condition of the Merger Agreement.[19] The Complaint ignores the many ramifications of Plaintiffs' request to declare the new agreement invalid, such as whether it would unwind the Merger, how to accomplish that six months after the closing, or what would happen to the thousands of new investors who have purchased shares of NuScale Power Corp. in the public market since May 3, 2022. *See* Compl. ¶ 51. Thus, Plaintiffs seek a declaration that would create problems rather than resolve them.

---

[19] *See, e.g.*, Goldberg Decl. Ex. 2, Merger Agreement § 2.05(b) ("At the Effective Time, the Existing Company [Operating Agreement] shall be amended and restated in its entirety as set forth on Exhibit H … to, among other things, recapitalize the authorized Equity Securities of the Surviving Company (including the reclassification of Existing Company Units into Company Common Units) …, permit the issuance and ownership of the Company Common Units as contemplated to be issued and owned upon consummation of the Transactions, … otherwise amend and restate the rights and preferences of the Existing Company Units (in connection with the reclassification to Company Common Units) and set forth the rights and preferences of the Company Common Units (including matters relating to the exchangeability of Company Common Units into Acquiror Common Stock).").

Indeed, Plaintiffs could have asserted their current claim **before** the Merger, when a judgment could have impacted the member vote.[20] But instead of pursuing their prior litigation in a timely manner, Plaintiffs waited until long after the Merger to bring a new—and now pointless—claim for declaratory relief. Entering a declaratory judgment at this late date would no longer serve any "useful purpose," since the Merger cannot be undone, and the Complaint's declaratory judgment claim should be dismissed. *See Exxon Mobil Corp.*, 369 F. App'x at 808.

### E. Plaintiff Bailey was not a NuScale member, so he lacks standing to challenge the amendment of the 5th Operating Agreement.

In addition to the other reasons for dismissal, Plaintiff Bailey lacks standing to assert claims against JNI and S&L because he was neither a party to the 5th Operating Agreement nor a NuScale member and, thus, lacks any right to vote regarding NuScale affairs. Compl. ¶¶ 29, 36; Goldberg Decl. Ex. 3, Equity Incentive Plan § 14 ("The Optionee … shall have no rights as a unitholder with respect to any common units until the date the Optionee, Successor or Lifetime Transferee becomes the holder of record of those units."); *Bocock v. INNOVATE Corp.*, 2022 WL 15800273, at *27 (Del. Ch. Oct. 28, 2022) (recognizing option holders lacked standing to assert shareholder claims); *Daly v. Yessne*, 131 Cal. App. 4th 52, 61 (2005) (recognizing an option holder lacked standing regarding "acts that took place before she converted her options into shares"). Although the Complaint excludes Bailey from its claim for breach of the 5th Operating Agreement, he remains a party to its declaratory judgment, good faith and fair dealing, and unjust enrichment claims against JNI and S&L. Compl. ¶¶ 65, 69, 75. Bailey (like the subclass he purports to

---

[20] Plaintiffs were plainly aware of their theory pre-closing, since their prior lawsuit asked the Oregon Circuit Court to enjoin the Merger without "approval of a majority vote [of] the Common Members consenting as a separate class." Goldberg Decl. Ex. 5, *Landrey* Compl. at 5 (Apr. 25, 2022).

represent) lacks standing to assert these claims against these Defendants, which is yet another reason for his claims to be dismissed.

## IV.     <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants Japan NuScale Innovation, LLC and Sargent & Lundy NuHoldings, LLC respectfully request dismissal of the Complaint's claims against them, with prejudice.

Respectfully submitted November 21, 2022    DLA PIPER LLP (US)

By:  *s/ Anthony Todaro*
Anthony Todaro, OSB No. 150714
*anthony.todaro@us.dlapiper.com*
David Freeburg, OSB No. 180984
*david.freeburg@us.dlapiper.com*
701 Fifth Avenue, Suite 6900
Seattle, Washington 98104-7029
Tel. (206) 839-4800

*Counsel for Defendant Japan NuScale Innovation, LLC*

LARKINS VACURA KAYSER LLP

By:  *s/ Christopher Kayser*
Christopher Kayser, OSB No. 984244
*cjkayser@lvklaw.com*
121 SW Morrison St., Ste. 700
Portland, Oregon 97217
Tel. (503) 222-4424

AND

VEDDER PRICE P.C.

By:  *s/ Thomas Cimino*
Thomas Cimino, admitted pro hac vice
*tcimino@vedderprice.com*
222 N. LaSalle Street, Suite 2300
Chicago, Illinois 60601
Tel. (312) 609-7784

*Counsel for Defendant Sargent & Lundy NuHoldings, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated this 21st day of November, 2022.

s/ *Jacey Bittle*

Legal Practice Specialist
