Darin Sands, OSB No. 106624
dsands@bradleybernsteinllp.com
BRADLEY BERNSTEIN SANDS LLP
1425 SW 20th Ave, Suite 201
Portland, Oregon 97201
Telephone:  (503) 734-2480

Mike Raiff (*pro hac vice forthcoming*)
MRaiff@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
Telephone:  (214) 698-3100
Fax:  (214) 571-2900

Colin B. Davis (*pro hac vice forthcoming*)
CDavis@gibsondunn.com
George B. Adams (*pro hac vice forthcoming*)
GAdams@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, California 92612
Telephone:  (949) 451-3800
Fax:  (949) 451-4220

*Attorneys for Defendant Fluor Enterprises, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JOHN J. SURINA, JR., trustee of the Elizabeth Sophia Surina Trust and Nicholas William Surina Trust; BRUCE LANDREY, an individual; PAUL LORENZINI, an individual; RICHARD SANDVIK, an individual; EDWARD G. WALLACE, an individual; JACK A. BAILEY, an individual; GARY CARL BARBOUR, an individual; PAUL D. BENNETT, an individual; JAMES E.CARTER, an individual; CHARLES MARCINKIEWICZ, trustee of the Charles & Kathleen Marcinkiewicz Trust; MICHAEL S. MCGOUGH, an individual; CHRISTOPHER RUNCKEL, an individual; | CASE NO. 3:22-cv-01410-YY<br><br>**DEFENDANT FLUOR ENTERPRISES, INC.'S MOTION TO DISMISS AND JOINDER IN MOTIONS TO DISMISS BY DEFENDANTS NUSCALE POWER, LLC, JAPAN NUSCALE INNOVATION, LLC, AND SARGENT & LUNDY NUHOLDINGS, LLC; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*Oral Argument Requested* |

**Defendant Fluor Enterprises, Inc.'s Motion to Dismiss**

and JOE CLAYTON TURNAGE, an
individual; on behalf of themselves and all
others similarly situated,

Plaintiffs,

v.

NUSCALE POWER, LLC, an Oregon
limited liability company; FLUOR
ENTERPRISES, INC., a California
corporation; JAPAN NUSCALE
INNOVATION, LLC, a Delaware limited
liability company; SARGENT & LUNDY
NUHOLDINGS, LLC, an Illinois limited
liability company,

Defendants.

_____

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ................................................................................................3

    I.      Organization and Management of NuScale Prior To the Merger. ...........................3

    II.     NuScale Enters Into a Merger Agreement and Amends the 5th Operating Agreement. ................................................................................................5

    III.    Plaintiffs File Suit Challenging the Merger. ...............................................6

LEGAL STANDARD ..........................................................................................7

ARGUMENT ....................................................................................................7

    I.      Plaintiffs' Claim For Breach Of The 5th Operating Agreement Against Fluor Fails As A Matter Of Law. ................................................................8

          A.    Fluor Did Not Owe Any Obligation to Plaintiffs Under Section 14.3. ................................................................................................9

          B.    The Complaint Fails to Identify Any Contract Terms That Fluor Allegedly Breached. ................................................................11

          C.    Alternatively, Fluor Is Not Liable For Claims Against the Company. ................................................................................13

    II.     Plaintiffs' Claim For Breach Of The Duty Of Good Faith And Fair Dealing Also Fails As A Matter Of Law. ....................................................15

    III.    Plaintiffs' Claim for Declaratory Relief Also Fails. .......................................17

    IV.    Plaintiffs' Quasi-Contract Claim for Unjust Enrichment, a Constructive Trust, or an Equitable Lien Likewise Fails. ................................................18

CONCLUSION ................................................................................................19

# TABLE OF AUTHORITIES

CASES

*Amfac Foods, Inc. v. Int'l Sys. & Control Corp.*,
    294 Or. 94 (1982)........................................................................................................15

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................7, 14

*Bernards v. Summit Real Est. Mgmt., Inc.*,
    229 Or. App. 357 (2009).............................................................................................14

*Bromfield v. HSBC Bank Nev.*,
    2013 WL 3929846 (D. Or. July 29, 2013) .........................................................9, 11

*Burget v. Lokelani Bernice Pauahi Bishop Trust*,
    200 F.3d 661 (9th Cir. 2000) ......................................................................................7

*Daniels–Hall v. Nat'l Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010) ......................................................................................7

*Davis v. Pacific Saw & Knife Co.*,
    2008 WL 4319981 (D. Or. Sept. 16, 2008) ..............................................................16

*Double J Investment, LLC v. Automation Control and Info. Sys. Corp.*,
    2013 WL 12190461 (D. Ariz. Nov. 22, 2013) .........................................................14

*Equine Legal Solutions, PC v. This Old Horse, Inc.*,
    2022 WL 2439921 (D. Or. July 5, 2022)..................................................................15

*Gibson v. Douglas Cnty.*,
    197 Or. App. 204 (2005).............................................................................................16

*Grants Pass Imaging & Diagnostic Center, LLC v. Marchini*,
    270 Or. App. 127 (2015)........................................................................................16, 17

*In re Gen. Motors LLC Ignition Switch Litig.*,
    339 F. Supp. 3d 262 (S.D.N.Y. 2018).......................................................................18

*Int'l Longshore & Warehouse Union, Local 40 v. Grain*,
    2013 WL 6665725 (D. Or. Dec. 17, 2013) ..............................................................14

*J. K. J. v. City of San Diego*,
    42 F.4th 990 (9th Cir. 2021) ..................................................................................3, 7

*Klamath Off-Project Water Users, Inc. v. Pacificorp*,
    237 Or. App. 434 (2010)................................................................17

*Levitt v. Yelp! Inc.*,
    765 F.3d 1123 (9th Cir. 2014) .......................................................7

*Machie v. Detroit Library Comm'n*,
    2014 WL 2648521 (E.D. Mich. June 13, 2014)...............................12

*Nguyen v. Madison Mgmt. Servs., LLC*,
    2016 WL 4708535 (D. Or. Sept. 7, 2016) ......................................16

*Nw. Infrastructure LLC v. City of Portland*,
    2021 WL 5912153 (D. Or. Dec. 14, 2021) ........................................3

*Plumbers Local No. 137 Pension Fund v. Davis*,
    2012 WL 104776 (D. Or. Jan. 11, 2012) ........................................11

*Quantum Tech. Partners II, L.P. v. Altman Browning & Co.*,
    2009 WL 4826474 (D. Or. Dec. 8, 2009), *aff'd*, 436 F. App'x 792 (9th Cir. 2011) ..............11

*Quantum Tech. Partners II, L.P. v. Altman Browning & Co.*,
    436 F. App'x 792 (9th Cir. 2011) ..................................................11

*Rapacki v. Chase Home Fin. LLC*,
    797 F. Supp. 2d 1085 (D. Or. 2011) ..............................................16

*Rubicon Global Ventures, Inc. v. Chongqing Zongshen Grp. Import/Export Corp.*,
    226 F. Supp. 3d 1141 (D. Or. 2016) ..............................................12

*Stoss v. J.P. Morgan Chase Bank, N.A.*,
    2014 WL 585946 (D. Or. Feb. 14, 2014)........................................12

*United States ex rel. Doughty v. Oregon Health & Scis. Univ.*,
    2017 WL 1364208 (D. Or. Apr. 11, 2017) .....................................18

*W. Prop. Holdings, LLC v. Aequitas Cap. Mgmt., Inc.*,
    284 Or. App. 316 (2017)...............................................................17

*Wallace v. Indus. Powder Coatings, Inc.*,
    2003 WL 21349636 (N.D. Ohio June 6, 2003).................................12

*In re Woodfield*,
    602 B.R. 747 (Bankr. D. Or. 2019)............................................10, 11

*Yogman v. Parrott*,
    325 Or. 358 (1997)........................................................................10

**Page v – Defendant Fluor Enterprises, Inc.'s Motion to Dismiss**

*Zuvich v. Harvard Street Wishrock, LLC*,
  2020 WL 6808766 (D. Or. Nov. 19, 2020).................................................15

**STATUTES**

O.R.S. § 42.230.................................................................................................10

O.R.S. § 63.130.................................................................................................10

O.R.S § 63.160..................................................................................................14

O.R.S. § 63.165.................................................................................................14

**RULES**

Federal Rule of Civil Procedure 8(a) ..............................................................11

Federal Rule of Civil Procedure 9(b)..........................................................14, 15

Federal Rule of Civil Procedure 12(b)(6) ....................................................1, 7

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7-1

Counsel for Defendant Fluor Enterprises, Inc. ("Fluor") conferred with counsel for Plaintiffs by telephone regarding this motion. The parties made a good faith effort to resolve this dispute and were unable to reach a resolution.

## MOTION

Fluor hereby moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss the First, Second, Third, and Fourth Claims in the Complaint, ECF No. 1, with prejudice. As demonstrated in the accompanying memorandum, Plaintiffs have failed to state any claim against Fluor upon which relief could be granted.

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

This action concerns a May 2, 2022 merger transaction (the "Merger") between NuScale Power, LLC ("NuScale" or the "Company")—a manager-managed Oregon limited liability company—and a subsidiary of Spring Valley Acquisition Corp. ("Spring Valley"), a publicly traded special purpose acquisition company, or "SPAC." Plaintiffs—a group of former NuScale employees who allegedly owned "Common Units" and/or "Common Unit Options" in NuScale—assert that the Merger was improper and that Defendants—NuScale and three of its former "Preferred" members—abused their purported control of NuScale. But the Complaint does not allege any facts showing abuse of control by anyone. Instead, Plaintiffs' grievance is that they received less consideration for the conversion of their NuScale *Common* Units as part of the Merger than the so-called "Preferred Member Defendants"—including Fluor—received for the conversion of their *Preferred* Units and the corresponding surrender of their preference rights. Plaintiffs' claims fail to state a claim for relief and should be dismissed.

**Page 1 – Defendant Fluor Enterprises, Inc.'s Motion to Dismiss**

As set forth in NuScale's concurrently filed Motion to Dismiss—which Fluor joins—Plaintiffs' claim for breach of contract (Count IV), and duplicative claims for declaratory relief (Count I) and breach of the covenant of good faith and fair dealing (Count III), misconstrue NuScale's governing agreements, which expressly authorized the very transactions Plaintiffs challenge.

Plaintiffs' claim for unjust enrichment (Count II) fares no better. As addressed in the concurrently filed Motion to Dismiss (the "Preferred Member Motion") by Japan NuScale Innovation, LLC ("JNI") and Sargent & Lundy NuHoldings, LLC ("S&L")—which Fluor likewise joins—Oregon law bars unjust enrichment claims where, as here, the Complaint concedes that the contracts at issue cover (and in fact permit) the exact same subject matter.

In addition to these threshold pleading failures, Plaintiffs' claims against Fluor (and the other Preferred Member Defendants) also fail because the Complaint alleges no facts showing any actionable conduct by the Preferred Member Defendants. Plaintiffs' suggestion that the Preferred Member Defendants somehow "abused" their purported control of NuScale is empty rhetoric, unsupported by any well-pleaded facts. NuScale was, at all relevant times, a *manager-managed* limited liability company ("LLC")—meaning it was managed by appointed managers and officers, and not by Fluor or any other member. The only specific action the Complaint alleges that Fluor and the other Preferred Members took was to exercise their member franchise by *voting* to amend NuScale's operating agreement in connection with the Merger—an action expressly permitted by NuScale's operating agreement in effect at that time. It goes without saying that LLC members do not breach the LLC's operating agreement by exercising rights granted to them in that agreement. Plaintiffs' baseless attempt to drag Fluor and the other

Preferred Member Defendants into what is at most a (meritless) dispute with NuScale should therefore be rejected. Plaintiffs' claims against Fluor should be dismissed with prejudice.

## BACKGROUND

To avoid unnecessary repetition, Fluor adopts and incorporates the Background sections in NuScale's Motion to Dismiss and the Preferred Member Motion.

## I. Organization and Management of NuScale Prior To the Merger.

Prior to the Merger, NuScale operated as a "manager-managed" Oregon LLC whose operating agreement was governed by Oregon law. (¶ 30.[1]) Fluor was at all relevant times a member of NuScale. (¶ 31.) Fluor held a majority interest in NuScale at the time of the Merger, including a majority of NuScale's Preferred Units. (*Id.*) JNI and S&L likewise held Preferred Units in NuScale before the Merger. (¶¶ 32-33.) The Complaint refers to Fluor, JNI, and S&L, collectively, as the "Preferred Member Defendants."[2] (¶ 34.)

On April 1, 2021, NuScale adopted the Fifth Amended and Restated Operating Agreement (the "5th Operating Agreement"). (5th Operating Agreement at 1.)[3] The 5th

---

[1] Unless otherwise noted, references to "¶__" or "¶¶ __" are to the allegations in the Complaint, ECF No. 1, which are assumed true for purposes of this Motion only. Defendant Fluor reserves its right to contest these allegations if the case proceeds. Unless otherwise noted, all emphasis is added, and all internal quotation marks and citations are omitted.

[2] Other individuals and entities besides Fluor, JNI, and S&L also held NuScale Preferred Units. (*See* Ex. 1 to Decl. of Jacob Goldberg in Supp. of Defs' Motions to Dismiss ("5th Operating Agreement"), Schedule A.) But for reasons unknown to Fluor, Plaintiffs did not name any of NuScale's other Preferred Members as defendants in the Complaint.

[3] On a motion to dismiss, the Court can take notice of documents incorporated by reference into the Complaint. *See J. K. J. v. City of San Diego*, 42 F.4th 990, 997 (9th Cir. 2021); *Nw. Infrastructure LLC v. City of Portland*, 2021 WL 5912153, at *2 (D. Or. Dec. 14, 2021). In this case, the 5th Operating Agreement, the Agreement and Plan of Merger which includes the 6th Operating Agreement, the Option Plan, and Unit Option Agreement all form the basis of Plaintiffs' claims and so may be considered on a motion to dismiss. (*See* ¶¶ 7-8, 11, 36-37, 39-41, 44-45, 47, 49, 51-52, 54, 81-89.)

Operating Agreement vested general authority for the management of NuScale's "business and affairs" in its "Managers," which are defined as the members of NuScale's Board of Managers (the "Board"). (*Id.* §§ 1.1 ("Manager"), 5.1(a).) It further permitted the Managers to delegate the day-to-day operation and control of NuScale to appointed "Officers." (*Id.* §§ 5.1(a), 5.3.)

In contrast, under the 5th Operating Agreement, members—like Fluor—(i) did not "owe any duty to the Company or the other Members solely by reason of being a Member" (*id.* § 6.1) and (ii) lacked "the authority or power to act for or on behalf of the Company in any manner or way, to bind the Company, or do any act that would be (or could be construed as) binding on the Company, in any manner or way, or to make any expenditures on behalf of the Company," absent specific authority granted to a member by the Board (*id.* § 6.2). The 5th Operating Agreement also expressly limited members' individual liability, providing: "the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and no Member shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member." (*Id.* § 6.1.)

The 5th Operating Agreement, like NuScale's previous operating agreements, divided ownership in NuScale into separate classes of Preferred Units and Common Units. (5th Operating Agreement § 3.1.) Holders of Preferred Units (the "Preferred Members") included investors in the Company, like Fluor, which alone contributed significant capital to NuScale and held a majority of NuScale's Preferred Units. (*Id.*, Schedule A; ¶ 31.) In recognition of the Preferred Members' significant capital investments, the 5th Operating Agreement granted Preferred Units certain "Preference Rights" not granted to Common Units. These Preference Rights included, among other valuable financial and consent rights, the right to vote on proposed

amendments to the 5th Operating Agreement and/or any merger between NuScale and another entity. (*Id.* § 5.1(d).) Specifically, the 5th Operating Agreement provided in relevant part that:

> [A]t any time when any Preferred Units are outstanding, the Company shall not . . . either directly or indirectly by amendment, merger, consolidation or otherwise, do any of the following without (in addition to any other vote required by this Agreement) the written consent or affirmative vote of the holders of at least a majority of the then-outstanding Preferred Units, voting together as a single class: . . . (xiv) amend any provision of this Agreement; . . . [or] (xvi) authorize or effect (A) any acquisition of the business of another Person (whether by purchase of stock or assets or otherwise) or (B) any merger or consolidation into or with another Person.

(*Id.*)

## II.  NuScale Enters Into a Merger Agreement and Amends the 5th Operating Agreement.

On December 13, 2021, NuScale entered into an Agreement and Plan of Merger ("Merger Agreement") with Spring Valley.  (*See* Ex. 2 to Decl. of Jacob Goldberg in Supp. of Defs' Motions to Dismiss ("Merger Agreement") at 1.)  The Merger's purpose was to raise significant capital for the Company, while simultaneously providing owners of NuScale the ability to exchange their NuScale units for a security that could be traded on the New York Stock Exchange.  (¶ 50.)

As part of the Merger, NuScale's Preferred Members—including Fluor—agreed to give up their Preferred Units and accompanying Preference Rights.  Specifically, in connection with the Merger, the Company obtained approval from members holding a majority of the Preferred Units—who held a majority of the Preferred Units and Common Units voting together as a combined class—to "amend and replace the 5th Operating Agreement" with the 6th Amended LLC Operating Agreement (the "6th Operating Agreement").  (¶¶ 31-33, 42-44.)  Thereafter, the "6th Operating Agreement was adopted by NuScale's Board of Managers, at a meeting on

December 21, 2021." (Id.)  The 6th Operating Agreement eliminated the distinction between Preferred and Common Units.  (¶ 47.)  To accomplish this result, two steps were taken.  First, Preferred Units were converted into Common Units at a ratio of 1.5818, 1.5636, 1.5576, or 1.6303 Common Units for each Preferred Unit, with the specific conversion ratio determined based on the fair market value of each series of the Preferred Unit.  (¶¶ 47, 49.)  Second, all NuScale Common Units were then reclassified into a new single class of units, which could be exchanged post-Merger for publicly traded securities in the acquirer, Spring Valley, which was renamed NuScale Power Corp. and publicly listed on the New York Stock Exchange.  (¶¶ 47, 55.)

## III.  Plaintiffs File Suit Challenging the Merger.

The Merger closed on May 2, 2022.  (¶ 44, 50.)  On September 19, 2022, Plaintiffs—a group of former NuScale employees who allegedly owned Common Units and/or Common Unit Options in NuScale—commenced this action.  Plaintiffs claim that by purportedly "enacting and implementing" the 6th Operating Agreement and converting NuScale's Preferred Units into Common Units at the conversion ratios specified in the 6th Operating Agreement "without the written consent of the Members holding a majority of the Common Units, consenting as a separate class," Defendants—including Fluor—allegedly (i) breached the 5th Operating Agreement (Count IV), (ii) breached the duty of good faith and fair dealing allegedly implied in the 5th Operating Agreement, and allegedly implied in certain "Unit Option Agreements" and an "Option Plan" to which Fluor is not even a party (Count III), and (iii) were unjustly enriched (Count II).  (¶¶ 69-90.)  Plaintiffs also seek related declaratory relief against all Defendants affirming that Common Members were allegedly entitled to vote, as a separate class, on whether

to adopt the amendments to the 5th Operating Agreement embodied in the 6th Operating Agreement (Count I).  (¶ 68.)

## LEGAL STANDARD

Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint that fails to allege facts that "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a complaint "does not need detailed factual allegations," there "must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Thus, the Court must accept "material fact[s]" as true, *Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000), but it is not "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *see also J. K. J.*, 42 F.4th at 997.  Moreover, generic allegations of some wrongdoing by some person or entity will not do—the "complaint must allege factual content that allows the court to draw the reasonable inference that *the defendant* is liable for the misconduct alleged."  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1134-35 (9th Cir. 2014).

## ARGUMENT

All of Plaintiffs' claims against Fluor fail for the reasons set forth in NuScale's concurrently filed Motion to Dismiss and the Preferred Member Motion.  Specifically, as set forth in NuScale's Motion—which Fluor joins and incorporates by reference—(i) Plaintiffs' claim for breach of the 5th Operating Agreement (Count IV) is contradicted by the plain text of that Agreement, is inconsistent with applicable statutory law and precedent, and fails to allege any non-speculative damages; (ii) Plaintiffs' claim for declaratory relief (Count I) is premised

entirely on Plaintiffs' claim for breach of the 5th Operating Agreement and is therefore duplicative and fails for the same reasons; and (iii) Plaintiffs' claim for breach of the duty of good faith and fair dealing (Count III) also fails because this duty cannot be construed to contradict or insert terms into a contract. *See* NuScale Motion to Dismiss § IV.

Likewise, Plaintiffs' Second Claim (for Unjust Enrichment; Constructive Trust; Equitable Lien) against the Preferred Member Defendants fails because, as set forth in the Preferred Member Motion—which Fluor also joins and incorporates by reference—Oregon law bars this claim where the contracts at issue cover—and in fact permit and protect—the conduct Plaintiffs challenge. *See* Preferred Member Motion § III.C.[4]

In addition to these defects, which alone require dismissal of all of Plaintiffs' claims against Fluor, the Complaint also fails to state a claim against Fluor because Plaintiffs do not allege any facts showing how or why Fluor is liable for the alleged misconduct—i.e., that it breached any contractual duty or other obligation to Plaintiffs, let alone that Fluor damaged Plaintiffs in any way. Instead, Plaintiffs apparently seek to hold Fluor liable because it held a majority interest in NuScale and exercised voting rights as a Preferred Member that *NuScale's 5th Operating Agreement expressly permitted*. As discussed below, Plaintiffs' claims against Fluor are baseless and fail as a matter of law.

## I. Plaintiffs' Claim For Breach Of The 5th Operating Agreement Against Fluor Fails As A Matter Of Law.

Count IV of the Complaint, which asserts a claim for breach of the 5th Operating Agreement, should be dismissed as to Fluor because the Complaint fails to plead facts showing

---

[4] The Complaint also fails to state a claim and should be dismissed as to Plaintiff Jack Bailey, who was not a member of NuScale at the time of the merger and lacks standing to assert claims against Fluor under Counts I, II and III. *See id.* § III.E.

that Fluor breached any contractual duty owed to Plaintiffs, much less that Plaintiffs' suffered damages as a result of any breach by Fluor.

"To state a claim for breach of contract under Oregon law, a plaintiff must allege the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach and defendant's breach resulting in damage to plaintiff." *Bromfield v. HSBC Bank Nev.*, 2013 WL 3929846, at *5 (D. Or. July 29, 2013). Applying these elements here, the Complaint fails to state a claim against Fluor for breach of the 5th Operating Agreement unless it pleads facts showing (i) that *Fluor* breached a contractual obligation that it owed to Plaintiffs under the 5th Operating Agreement and (ii) the breach damaged Plaintiffs. *See id.* (dismissing complaint where plaintiff failed "to allege . . . how HSBC breached [the] contract . . . and how HSBC's breach of contract caused Plaintiff damage"). Because the Complaint does not do so, Count IV fails as to Fluor.

A. Fluor Did Not Owe Any Obligation to Plaintiffs Under Section 14.3.

Plaintiffs contend that Common Members were entitled to vote as a separate class on the amendments to the 5th Operating Agreement, which were implemented through the Merger into the 6th Operating Agreement. (¶ 12.) They base this contention entirely on Section 14.3(aa) of the 5th Operating Agreement (¶¶ 40-41), which provides in relevant part:

> Amendment. Subject to the right *of the Company* pursuant to Section 3.1(d) to amend this Agreement in connection with the creation and/or issuance of Equity Securities in accordance with the terms of hereof, this Agreement may be amended or modified, or any provision waived, only with the written consent of (a) the Members holding a majority of the votes of the issued and outstanding Common Units and Preferred Units consenting together as a single class (on an As-Converted Basis) and (b) the Members holding a majority of the Preferred Units, consenting as a separate class *provided however*, that . . . *(aa) any amendment to Section 3.1(g), 4.1(a)(iii), 4.1(a)(iv), 4.1(a)(v), or 12.2(c), or this clause (aa) to the proviso of Section 14.3 (other than any amendment to such Sections and clause (aa) pursuant to Section*

> *3.1(d) in connection with the creation and/or issuance of Equity*
> *Securities), shall also require the written consent of the Members*
> *holding a majority of the Common Units consenting as a separate*
> *class.*

5th Operating Agreement § 14.3(aa) (emphasis added). But on its face, Section 14.3 does not

identify any obligation owed by Fluor to Plaintiffs. Section 14.3 instead limits "the right *of the*

*Company*" to amend the 5th Operating Agreement under Section 3.1(d), by subjecting that right

to varying consent rights granted to members. *See Yogman v. Parrott*, 325 Or. 358, 363 (1997)

("To interpret a contractual provision, . . . the court examines the text of the disputed provision,

in the context of the document as a whole. If the provision is clear, the analysis ends."); *see also*

O.R.S. § 42.230 (in construing a document, the court is "to ascertain and declare what is, in

terms or in substance, contained therein, not to insert what has been omitted, or to omit what has

been inserted").[5]

    Fluor is not the Company. Nor does Fluor—even as NuScale's majority member—act

for the Company. The "nature of a member's management rights depends on whether an LLC is

member-managed or manager-managed." *See In re Woodfield*, 602 B.R. 747, 756 (Bankr. D. Or.

2019). Here, pursuant to NuScale's Articles of Organization, the 5th Operating Agreement

vested general authority for the management of NuScale's "business and affairs" in its Board of

Managers and its Officers. (5th Operating Agreement §§ 5.1(a), 5.3.) By comparison, members

like Fluor lacked "the authority or power to act for or on behalf of the Company in any manner

or way," absent specific authority granted by the Board to a member. (*Id.* § 6.2; *see also* O.R.S.

---

[5] As explained in NuScale's accompanying Motion, Plaintiffs' breach claim premised on Section 14.3(aa) also fails as to all Defendants because the amendment of the 5th Operating Agreement in connection with the Merger was "in connection with the creation and/or issuance of Equity Securities" under Section 3.1(d), and so did not require consent of the Common Members voting as a separate class. NuScale Motion § IV.A.1.

**Page 10 – Defendant Fluor Enterprises, Inc.'s Motion to Dismiss**

§ 63.130(2)(b) ("In a manager-managed limited liability company, unless otherwise provided in the articles of organization or any operating agreement . . . any matter relating to the business of the limited liability company [generally] may be exclusively decided by the manager or, if there is more than one manager, by a majority of the managers.").)  The Complaint does not allege that the Board granted Fluor any such authority, and the Board did not do so.  In short, the Complaint does not and cannot identify any duty that *Fluor* owed to Plaintiffs under Section 14.33(aa), let alone allege that Fluor failed to perform that duty and damaged Plaintiffs, as required to plead a claim for breach of the 5th Operating Agreement.  *See Bromfield,* 2013 WL 3929846, at *5; *see also In re Woodfield*, 602 B.R. at 757 n. 6 (noting in a manager-managed LLC, "the member i*n his capacity as a member* has no management rights other than voting on a manager" (emphasis in original)).[6]

B.  <u>The Complaint Fails to Identify Any Contract Terms That Fluor Allegedly Breached.</u>

Plaintiffs attempt to obscure their inability to plead a breach of contract claim against Fluor (and the other Preferred Member Defendants) by alleging that "*Defendants*" collectively "breached the 5th Operating Agreement . . . when *Defendants* amended the 5th Operating Agreement and replaced it with the 6th Operating Agreement."  (¶ 84.)  But aside from Section 14.3(aa)—which does not apply to Fluor—Plaintiffs do not identify any particular

_____

[6]  *See also Quantum Tech. Partners II, L.P. v. Altman Browning & Co*., 2009 WL 4826474, at *5 (D. Or. Dec. 8, 2009) (recognizing, under analogous Delaware law, that a shareholder may not "bring a breach-of-contract action . . . for damages against other shareholders for violations of corporate bylaws"), *aff'd*, 436 F. App'x 792, 793 (9th Cir. 2011) (finding shareholders "cannot" "sue each other for breach of [corporate] bylaws").  Oregon routinely follows these kinds of decisions regarding matters of Delaware corporate law.  *See Plumbers Local No. 137 Pension Fund v. Davis*, 2012 WL 104776, at *3 & n3 (D. Or. Jan. 11, 2012) (acknowledging Delaware as "the body of law to which Oregon looks for guidance").

**Page 11 – Defendant Fluor Enterprises, Inc.'s Motion to Dismiss**

contract terms that they contend "Defendants" breached.  This type of vague pleading does not suffice to state a claim under Federal Rule of Civil Procedure 8(a) and alone justifies dismissal. *See Rubicon Global Ventures, Inc. v. Chongqing Zongshen Grp. Import/Export Corp.*, 226 F. Supp. 3d 1141, 1162 (D. Or. 2016) (dismissing breach of contract claim that "fail[ed] to identify the terms of the agreement or the [specific] obligations Defendants failed to fulfill").

Moreover, Plaintiffs' conclusory assertion that "Defendants amended the 5th Operating Agreement" is contradicted by other allegations in the Complaint.  Specifically, Plaintiffs admit that "[t]he 6th Operating Agreement was adopted by NuScale's Board of Managers."  (¶ 44.) The only affirmative action that Fluor and the other Preferred Member Defendants are alleged to have taken was to "*vote*[] to amend and replace the 5th Operating Agreement with the 6th Operating Agreement."  (¶ 44.)  But merely consenting to the amendments cannot support a breach of contract claim against Fluor because the 5th Operating Agreement expressly granted Fluor the right to vote on amendments and shielded that right from claims by other members.[7] Specifically, Section 5.1(d) required—as part of Preferred Units' Preference Rights—that when "*the Company* . . . either directly or indirectly by amendment, merger, consolidation or otherwise," (i) "amend[ed] any provision of this Agreement" and/or (ii) "authorize[ed] or effect[ed] . . . any merger or consolidation," it must secure the written consent of the "holders of at least a majority of the then-outstanding Preferred Units voting together as a single class."  (5th

---

[7] *Accord Stoss v. J.P. Morgan Chase Bank, N.A.*, 2014 WL 585946, at *7 (D. Or. Feb. 14, 2014) ("The party invoking its express, written contractual right does not, merely by doing so, violate its [contractual] duty of good faith."); *see also Machie v. Detroit Library Comm'n*, 2014 WL 2648521, at *4 (E.D. Mich. June 13, 2014) ("Defendants did not breach the contract . . . [by] exercise[ing] their rights under the contract not to renew."); *Wallace v. Indus. Powder Coatings, Inc.*, 2003 WL 21349636, at *2 (N.D. Ohio June 6, 2003) ("[E]mployer, moreover, did not breach the collective bargaining agreement when it . . . exercised valid management rights that it had reserved to itself.").

**Page 12 – Defendant Fluor Enterprises, Inc.'s Motion to Dismiss**

Operating Agreement § 5.1(d).)  Section 5.1(d) thus reaffirms that it is the *Company* that amends the Operating Agreement or effects a merger, and the Preferred Members merely consent to that action.  Further, Fluor's exercise of its consent vote was protected under Section 14.8.  Section 14.8 left to each member the decision to "exercise or refrain from exercising" its "rights, powers or privileges" as a member.  (5th Operating Agreement § 14.8.)  And it expressly protected members against claims for exercising (or refraining from exercising) such rights, stating:   "[a] Member shall not incur or be subject to any liability or obligation to any other Member or any other Person, by reason of exercising or refraining from exercising any such rights, powers or privileges."  (*Id.*)[8]  Plaintiffs ignore this express exculpatory language, which further bars their claim against Fluor for breach of the Operating Agreement.

Because Plaintiffs do not—and cannot—allege any facts showing that *Fluor* owed any contractual obligation to Plaintiffs regarding the amendment of the 5th Operating Agreement, let alone that Fluor breached any terms of the 5th Operating Agreement and damaged Plaintiffs, Plaintiffs' Fourth Claim for breach of contract should be dismissed with prejudice.

C.  Alternatively, Fluor Is Not Liable For Claims Against the Company.

As discussed above, Plaintiffs have not and cannot plead any direct claim against Fluor for breach of the 5th Operating Agreement.  To the extent Plaintiffs seek to impose liability on Fluor indirectly, based on their alleged control of the Company, that theory is not supported by any factual allegations in the Complaint and also would fail.

---

[8] *See also id.* § 14.9 ("[N]o Member … shall be liable to any other Member for any action heretofore or hereafter taken or omitted to be taken by any of them in connection with their purchase or acquisition of any Units.").

**Page 13 – Defendant Fluor Enterprises, Inc.'s Motion to Dismiss**

The 5th Operating Agreement expressly limits the individual liability of all of NuScale's members. Specifically, Section 6.1 provides that, as a general matter, "the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and no Member shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member." (5th Operating Agreement § 6.1.) This aligns with the Oregon LLC Act, which similarly provides:

> The debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, are solely the debts, obligations and liabilities of the limited liability company. *A member or manager is not personally liable for a debt, obligation or liability of the limited liability company solely by reason of being or acting as a member or manager.*

O.R.S. § 63.165. Exculpatory provisions like that in the 5th Operating Agreement are entirely enforceable under Oregon law. *See, e.g.*, *Bernards v. Summit Real Est. Mgmt., Inc.*, 229 Or. App. 357, 364 (2009); O.R.S. § 63.160 ("The articles of organization or any operating agreement … and may eliminate or limit the liability of a member … to the limited liability company or its members for damages from … acts or omissions . . . .").

Moreover, the Complaint does not and cannot allege facts to justify in any way "piercing the veil" between NuScale and Fluor. The Complaint hints at this theory by alleging that Fluor held a "majority interest in NuScale" and "had the ability to control the Company through its Board of Managers." (¶ 31.) These type of vague and conclusory allegations do not suffice to "raise a right to relief above the speculative level" as required to state a claim under Rule 8(a) (*Twombly*, 550 U.S. at 555), much less suffice under the heightened standard for allegations of fraud under Rule 9(b) (*see Int'l Longshore & Warehouse Union, Local 40 v. Grain*, 2013 WL 6665725, at *6 (D. Or. Dec. 17, 2013) (applying Rule 9(b)'s heightened particularity standard to

**Page 14 – Defendant Fluor Enterprises, Inc.'s Motion to Dismiss**

the fraud allegations of plaintiff's alter ego theory); *see also Double J Investment, LLC v. Automation Control and Info. Sys. Corp.*, 2013 WL 12190461, at *1 n.1 (D. Ariz. Nov. 22, 2013) ("Because certain aspects of Plaintiffs' alter ego/piercing the corporate veil claim are based on fraud, the Court applies the heightened pleading standards of Rule 9(b) to those allegations.")).

"Piercing the corporate veil is an *extraordinary remedy which exists as a last resort*, where there is no other adequate and available remedy to repair plaintiff's injury." *Zuvich v. Harvard Street Wishrock, LLC*, 2020 WL 6808766, at *3 (D. Or. Nov. 19, 2020).  Plaintiffs do not and cannot show dire circumstances justifying veil-piercing here.  In any event, piercing the veil requires *factual* allegations, and not mere speculation, that Fluor actually controlled NuScale through its Board and "used this control to engage in improper conduct that harmed [Plaintiffs]." *Id.*; *see also Amfac Foods, Inc. v. Int'l Sys. & Control Corp.*, 294 Or. 94, 108-09 (1982) ("The shareholder's alleged control over the corporation must not be only potential but must actually *have been exercised* in a manner" that was improper and that harmed plaintiff).  "In this context, improper conduct needed to pierce a corporate veil must in some way seek to manipulate the corporate form to the detriment of the corporation's [or LLC's] creditors." *Equine Legal Solutions, PC v. This Old Horse, Inc.*, 2022 WL 2439921, at *6 (D. Or. July 5, 2022).  Plaintiffs do not allege any facts showing purported manipulation of NuScale's corporate form here.

## II.    Plaintiffs' Claim For Breach Of The Duty Of Good Faith And Fair Dealing Also Fails As A Matter Of Law.

Plaintiffs' inability to plead a claim against Fluor for breach of the 5th Operating Agreement likewise dooms their Third Claim for breach of the implied covenant of good faith and fair dealing.  Plaintiffs concede that this claim is based on their supposed "contractual expectations that Defendants would adhere to the plain language of the contracts."  (¶ 78;

*see also* ¶ 6.)  As a threshold matter, the Complaint admits that Fluor is not a party to the Unit Option Agreements and Option Plan.  (¶¶ 87.)  Fluor thus cannot owe any duty of good faith or fair dealing in connection with those agreements, and any claim for breach of that nonexistent duty fails as a matter of law.  *See, e.g., Nguyen v. Madison Mgmt. Servs., LLC*, 2016 WL 4708535, at *8 (D. Or. Sept. 7, 2016) ("A claim for breach of the implied contractual obligation of good faith and fair dealing requires the existence of a contract between the parties."); *Rapacki v. Chase Home Fin. LLC*, 797 F. Supp. 2d 1085, 1091 (D. Or. 2011) (holding that the plaintiff could not pursue a claim for breach of the duty of good faith and fair dealing against a defendant that was not a party to the underlying contract); *Davis v. Pacific Saw & Knife Co*., 2008 WL 4319981, at *2 (D. Or. Sept. 16, 2008) (in the absence of a contract between the plaintiff and the defendant, the plaintiff "cannot assert a claim for breach of the covenant of good faith and fair dealing").[9]

Plaintiffs' claim under the 5th Operating Agreement fares no better.  Plaintiffs' problem is straightforward:  the duty of good faith and fair dealing "cannot expand the parties' substantive duties under a contract; rather, it relates to the *performance* of the contract" as compared to the reasonable expectations of the parties.  *Gibson v. Douglas Cnty*., 197 Or. App. 204, 217 (2005); *see also Grants Pass Imaging & Diagnostic Center, LLC v. Marchini*, 270 Or. App. 127, 139 (2015) ("The law imposes a duty of good faith and fair dealing in contracts to facilitate performance and enforcement in a manner that is consistent with the terms of the contract and that effectuates the reasonable contractual expectations of the parties.").  "The

---

[9] The same logic requires dismissal of the good faith and fair dealing claim by Plaintiff Bailey, who is not a party to *any* agreement with Fluor—not even the 5th Operating Agreement.

reasonable contractual expectations of the parties are shown by the express terms of the contract. . . . Put another way, a party never violates the duty of good faith and fair dealing by invoking its express, written contractual right." *W. Prop. Holdings, LLC v. Aequitas Cap. Mgmt., Inc.*, 284 Or. App. 316, 324–25 (2017).

Here, the contractual language in Section 14.3 that Plaintiffs rely on throughout their Complaint does not identify any obligation owed by Fluor to Plaintiffs. (*Supra* Argument § I.A.) Moreover, Sections 5.1(d) and 14.8 expressly permitted and protected the only action the Complaint alleges Fluor took—voting in favor of amendments to the 5th Operating Agreement. (*Id.*; *see also* Preferred Member Motion § III.B.) Accordingly, because Plaintiffs allege only that Fluor invoked its "express, written contractual right" to vote on amendments to the 5th Operating Agreement, Plaintiffs fail to plead a claim for breach of the implied duty of good faith and fair dealing against Fluor, and their Third Claim should be dismissed as well. *See W. Prop. Holdings, LLC*, 284 Or. App. at 330 (affirming dismissal of good faith and fair dealing claim where plaintiff sought to "improperly expand defendant's contractual duties and effectively insert a new term into the agreement"); *Grants Pass Imaging & Diagnostic Center, LLC*, 270 Or. App. at 140 (finding "defendant's actions could not support a claim for breach of the implied duty of good faith and fair dealing" where the relevant contractual prohibition did not apply to defendant); *Klamath Off-Project Water Users, Inc. v. Pacificorp*, 237 Or. App. 434, 445 (2010) (the duty of good faith and fair dealing "cannot contradict an express contractual term").

## III. Plaintiffs' Claim for Declaratory Relief Also Fails.

Based on identical allegations as their claim for breach of the 5th Operating Agreement, Plaintiffs also seek "declaratory judgment." As set forth in NuScale's Motion and the Preferred Member Motion, this claim also must be dismissed because it cannot be undone and does not

serve any useful purpose, and because Plaintiffs base it on the same factual allegations as their

deficient (and duplicative) claim for breach of the 5th Operating Agreement (Count IV).

(NuScale Motion § IV.B; Preferred Member Motion § III.D.) Moreover, as discussed above, any

dispute over whether "the written consent of a majority of the holders of Common Units, voting

as a class" was required under Section 14.3(aa) to amend the 5th Operating Agreement and

restructure NuScale's Preferred and Common Units (¶¶ 66-67) does not implicate Fluor or any of

the Preferred Member Defendants. (*See supra* Argument § I.A.) Plaintiffs' First Claim should

be dismissed for this reason as well.

## IV. Plaintiffs' Quasi-Contract Claim for Unjust Enrichment, a Constructive Trust, or an Equitable Lien Likewise Fails.

As explained in the Preferred Member Motion, Plaintiffs also have failed to state a valid

claim for quasi-contractual relief, whether labeled as unjust enrichment, constructive trust, or

equitable lien. (Preferred Member Motion § III.C.) Specifically, and in addition to the other

deficiencies identified in the Preferred Member Motion, the existence of the 5th Operating

Agreement—which the Complaint admits "is a valid contract binding the parties" (¶ 82)—dooms

Plaintiffs' quasi-contract claim for unjust enrichment because, "[u]nder Oregon law, once a court

determines that a valid contract exists, an unjust enrichment claim must fail." *In re Gen. Motors*

*LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262, 339 (S.D.N.Y. 2018); *see also United States ex*

*rel. Doughty v. Oregon Health & Scis. Univ.*, 2017 WL 1364208, at *7 (D. Or. Apr. 11, 2017)

(dismissing unjust enrichment claim because it "ar[o]se from the express contracts the

government alleged in its Complaint"). Plaintiffs' Second Claim thus should be dismissed as

well.

**CONCLUSION**

For the foregoing reasons, and the additional reasons set forth in the concurrently filed Motions to Dismiss by NuScale, JNI, and S&L, the Court should dismiss the Complaint in its entirety with prejudice as to Fluor.

Dated: November 21, 2022

Respectfully submitted,

Mike Raiff (*pro hac vice forthcoming*)
MRaiff@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
Telephone: (214) 698-3100
Fax: (214) 571-2900

Colin B. Davis (*pro hac vice forthcoming*)
CDavis@gibsondunn.com
George B. Adams (*pro hac vice forthcoming*)
GAdams@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, California 92612
Telephone: (949) 451-3800
Fax: (949) 451-4220

/s/ Darin Sands
Darin Sands, OSB No. 106624
dsands@bradleybernsteinllp.com
BRADLEY BERNSTEIN SANDS LLP
1425 SW 20th Ave, Suite 201
Portland, Oregon 97201
Telephone: (503) 734-2480

*Attorneys for Fluor Enterprises, Inc.*