**Timothy S. DeJong**, OSB No. 940662
Email: tdejong@stollberne.com
**Keith A. Ketterling**, OSB No. 913368
Email: kketterling@stollberne.com
**Lydia Anderson-Dana**, OSB No. 166167
Email: landersondana@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840

**Attorneys for Plaintiffs**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JOHN J. SURINA, JR., trustee of the Elizabeth Sophia Surina Trust and Nicholas William Surina Trust; BRUCE LANDREY, an individual; PAUL LORENZINI, an individual; RICHARD SANDVIK, an individual; EDWARD G. WALLACE, an individual; JACK A. BAILEY, an individual; GARY CARL BARBOUR, an individual; PAUL D. BENNETT, an individual; JAMES E. CARTER, an individual; CHARLES MARCINKIEWICZ, trustee of the Charles & Kathleen Marcinkiewicz Trust; MICHAEL S. MCGOUGH, an individual; CHRISTOPHER RUNCKEL, an individual; and JOE CLAYTON TURNAGE, an individual; on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>   v. | Case No. 3:22-cv-01410-YY<br><br>**PLAINTIFFS' OMNIBUS RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**<br><br><u>ORAL ARGUMENT REQUESTED</u> |

NUSCALE POWER, LLC, an Oregon limited liability company; FLUOR ENTERPRISES, INC., a California corporation; JAPAN NUSCALE INNOVATION, LLC, a Delaware limited liability company; SARGENT & LUNDY NUHOLDINGS, LLC, an Illinois limited liability company,

Defendants.

# TABLE OF CONTENTS

I.     INTRODUCTION AND SUMMARY OF RESPONSE ................................................... 1

II.    STATEMENT OF FACTS ................................................................................. 4

III.   LEGAL STANDARDS ..................................................................................... 8

       A.    Motions to Dismiss ............................................................................. 8

       B.    Contract Interpretation Under Oregon Law ........................................... 9

IV.    DETAILED ARGUMENT ................................................................................. 10

       A.    Plaintiffs State an Actionable Claim for Breach of the 5th Operating
             Agreement (Fourth Claim for Relief). ................................................. 10

             1.    The Preferred Conversion Breached the Contract. ...................... 11

             2.    The Amendments Relating to the Preferred Conversion Breached
                   the Contract. ................................................................... 12

                   a.    The Single Exception Pursuant to Section 3.1(d) Does
                         Not Apply ............................................................ 13

                   b.    Section 14.3 Does Not Provide an Exception for Amendments
                         Made Pursuant to a Merger. ....................................... 16

                   c.    Section 5.1(d)(xiv) Does Not Apply. ............................ 17

                   d.    NuScale Is an Oregon LLC and Not Governed by
                         Delaware Law. ....................................................... 18

             3.    Plaintiffs State Claims for Breach of the 5th Operating Agreement
                   Against the Preferred Member Defendants ............................... 21

             4.    Plaintiffs Are Not Required to Plead or Prove that Common Members
                   Would Have Rejected the Preferred Conversion or Amendments. ......... 23

       B.    Plaintiffs State an Actionable Claim for Breach of the Option Unit Agreements
             and Option Plan (Fifth Claim for Relief). ............................................ 24

       C.    Plaintiffs State Actionable Claims for Equitable Relief
             (Second Claim for Relief) ................................................................. 27

       D.    Plaintiffs State an Actionable Claim for the Breach of Good Faith and Fair
             Dealing (Third Claim for Relief). ....................................................... 29

V.     CONCLUSION ............................................................................................ 33

# TABLE OF AUTHORITIES

Cases                                                                                    Page(s)

*Abercrombie v. Hayden Corp.*
    320 Or. 279, 883 P.2d 845 (1994) .......................................................... 9

*ACN Opportunity, LLC v. Emp't Dep't*
    362 Or. 824, 418 P.3d 719 (2018) .......................................................... 9

*Am. Family Ass'n, Inc. v. City & Cnty. of S.F.*
    277 F.3d 1114 (9th Cir. 2002) ............................................................... 8

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009).............................................................................. 8

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007).............................................................................. 8

*Bishop v. Dep't of Revenue*
    13 Or. Tax 472 (1996) ......................................................................... 25

*Causey v. Portfolio Acquisitions, LLC*
    No. CV 10-2781 KJM EFB, 2013 WL 246916 (E.D. Cal. Jan. 22, 2013) ............................. 23

*Conley v. Gibson*
    355 U.S. 41 (1957)................................................................................ 8

*Elliot Associates, L.P. v. Avatex Corp.*
    715 A.2d 843 (Del. 1998) ............................................................ 18, 19, 20, 21

*Elkay Int'l Ltd. v. Color Image Apparel, Inc.*
    No. CV1408028MMMVBKX, 2015 WL 13917733 (C.D. Cal. June 3, 2015)....................... 23

*Elliott v. Tektronix, Inc.*
    102 Or. App. 388, 796 P.2d 361 (1990)................................................... 29

*Gemstone Builders, Inc. v. Stutz*
    245 Or. App. 91, 261 P.3d 64 (2011)...................................................... 10

*Gibson v. Douglas Cnty.*
    197 Or. App. 204, 106 P.3d 151 (2005).................................................... 31

*Greenmont Capital Partners I, LP v. Mary's Gone Crackers, Inc.*
  CIV.A. 7265-VCP, 2012 WL 4479999 (Del. Ch. Sept. 28, 2012) ......................................... 21

*Hampton Tree Farms, Inc. v. Jewett*
  320 Or. 599, 892 P.2d 683 (1995) ................................................................... 29, 32

*Hazelwood Water Dist. v. First Union Mgmt., Inc.*
  78 Or. App. 226, 715 P.2d 498 (1986) .................................................................. 29

*In re Kinder Morgan, Inc. Corp. Reorganization Litig.*
  CIV.A. 10093-VCL, 2014 WL 5667334 (Del. Ch. Nov. 5, 2014) ........................................ 19

*Int'l Bus. Machs., Corp.*
  260 F. Supp. 3d 1345 (D. Or. 2017) ................................................................... 29

*Jaqua v. Nike, Inc.*
  125 Or. App. 294, 865 P.2d 442 (1993) ................................................................. 27

*Kansas City Power & Light Co. v. W. Res., Inc.*
  939 F. Supp. 688 (W.D. Mo. 1996) ................................................................... 20

*Kashmir Corp. v. Patterson*
  43 Or. App. 45, 602 P.2d 294 (1979) ................................................................... 28

*Kentrox, Inc. v. Bernstein*
  No. 3:13-CV-01492 -ST, 2014 WL 4221592 (D. Or. May 9, 2014) ...................................... 26

*Klamath Off-Project Water Users, Inc. v. Pacificorp*
  237 Or. App. 434, 240 P.3d 94 (2010) ......................................................... 29, 30, 31, 32

*Lamb Bros. v. First State Bank*
  285 Or. 39, 589 P.2d 1094 (1979) ................................................................... 24

*Larisa's Home Care, LLC v. Nichols-Shields*
  362 Or. 115, 404 P.3d 912 (2017) ................................................................... 27

*Madson v. W. Or. Conference Ass'n of Seventh-Day Adventists*
  209 Or. App. 380, 149 P.3d 217 (2006) ............................................................. 9, 15

*Marks v. Dep't of Revenue*
  No. TC-MD 050715D, 2007 WL 2162647 (Or. T.C. July 24, 2007) ...................................... 26

*McKenzie v. Pacific Health & Life Ins. Co.*
  118 Or. App. 377, 847 P.2d 879 (1993) ............................................................. 31, 30

*Mil-Ray v. EVP Int'l, LLC*
  No. 3:19-CV-00944-YY, 2020 WL 3317931 (D. Or. Mar. 17, 2020) ..................................... 29

*Nw. Nat. Gas Co. v. Chase Gardens, Inc.*
    333 Or. 304, 39 P.3d 846 (2002) ...................................................... 10

*PacifiCorp v. Nw. Pipeline GP*
    879 F. Supp. 2d 1171 (D. Or. 2012) .............................................. 24

*Petrillo v. Pub. Emps. Ret. Bd.*
    286 Or. App. 200, 398 P.3d 1006 (2017)....................................... 10

*Scheuer v. Rhodes*
    416 U.S. 232 (1974)........................................................................ 8

*Swartz v. KPMG LLP*
    476 F.3d 756 (9th Cir. 2007) .......................................................... 9

*Warner Commc'ns Inc. v. Chris-Craft Indus., Inc.*
    583 A.2d 962 (Del. Ch. 1989)....................................................... 21

*Westar Elec. Co. v. Westar Acquisition Corp.*
    177 Or. App. 174, 33 P.3d 718 (2001)............................................ 9

*Whistler v. Hyder*
    129 Or. App. 344, 879 P.2d 214 (1994)........................................ 30

*Wilcher v. Amerititle, Inc.*
    212 Or. App. 498, 157 P.3d 790 (2007)........................................ 24

*Williams v. RJ Reynolds Tobacco Co.*
    351 Or. 368, 271 P.3d 103 (2011) ................................................. 9

*Yogman v. Parrott*
    325 Or. 358, 937 P.2d 1019 (1997) ....................................... passim

*Zygar v. Johnson*
    169 Or. App. 638, 10 P.3d 326 (2000)..................................... 31, 30

<u>Statutes</u>

8 Del. C. § 242(b)(2)........................................................................ 18, 19

8 Del. C. § 251(b)(3)............................................................................. 19

ORS 41.740 .......................................................................................... 10

ORS 42.220......................................................................................... 9, 10

ORS 42.230............................................................................................. 9

ORS 63.130(3)(a).................................................................................. 17

ORS 63.155 .................................................................................................................. 30, 32

ORS 63.441 .................................................................................................................. 16, 17

ORS 63.444 .................................................................................................................. 16, 17

ORS 63.481(2)-(3) ............................................................................................................. 20

ORS 63.487 ............................................................................................................ 16, 17, 20

<u>Rules</u>

Federal Rule of Civil Procedure 8(a)(2) ......................................................................... 8

<u>Other Authorities</u>

17B C.J.S. Contracts § 830 .......................................................................................... 10

18 C.J.S. Corporations § 49 ......................................................................................... 19

Restatement (Third) of Restitution & Unjust Enrichment § 13 .............................. 27, 28

Restatement (Third) of Restitution and Unjust Enrichment § 39 (2011) ...................... 28

Restatement (Third) of Restitution and Unjust Enrichment § 48 (2011) ...................... 28

Plaintiffs submit this omnibus memorandum in opposition to Defendant Nuscale Power, LLC's Motion to Dismiss (Dkt. No. 18); Defendants Japan Nuscale Innovation, LLC and Sargent & Lundy NuHoldings, LLC's Motion to Dismiss (Dkt. No. 21); and Defendant Fluor Enterprises, Inc.'s Motion to Dismiss (Dkt. No. 22).

## I.    INTRODUCTION AND SUMMARY OF RESPONSE

Motions to dismiss for failure to state a claim are intended to challenge the sufficiency of the allegations in the complaint. As explained below, Plaintiffs' Complaint pleads facts supporting each element of the claims asserted against each Defendant. Defendants go beyond the allegations of the Complaint, seeking a ruling on their defenses to those claims and to have facts and contract provisions interpreted in their favor, none of which is appropriate on a motion to dismiss. Accordingly, the motions to dismiss should be denied.

Plaintiffs allege claims for declaratory judgment, unjust enrichment, constructive trust, equitable lien, breach of the duty of good faith and fair dealing, and breaches of two contracts. As to each claim, Defendants contend that Plaintiffs fail to state a claim. As explained herein, Plaintiffs plead facts to support each element of each asserted claim.[1]

The claims arise out of Defendants' abuse of their control of NuScale Power, LLC ("NuScale" or the "Company"). At the relevant time, NuScale had two types of equity securities, Common Units and Preferred Units. Complaint ¶ 3. Plaintiffs and the members of the proposed Class, most of whom are current and former employees of NuScale, held Common Units and/or options to purchase Common Units. *Id*. ¶ 4. Defendants Fluor Enterprises, Inc. ("Fluor"), Japan NuScale Innovation LLC ("Japan NuScale"), and Sargent & Lundy NuHoldings, LLC ("Sargent & Lundy") held various classes of Preferred Units.[2] *Id*. The 5th

---

[1] Even though Plaintiffs have properly pleaded a declaratory judgment claim, Plaintiffs agree to concede that claim and reserve the right to re-assert it after discovery.

[2] Holders of Common Units are referred to herein as "Common Members," holders of Preferred Units as "Preferred Members," and holders of Common Unit Options as "Option Holders."

Page 1 – **PLAINTIFFS' OMNIBUS RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

Operating Agreement was in place and is the main contract at issue in this dispute. *Id.* ¶ 7. All Defendants, and all but one Plaintiff, were parties to the 5th Operating Agreement. *Id.* ¶ 36.

Central to this controversy are Defendants' actions to re-classify, or convert, all Preferred Units into increased numbers of Common Units in May 2022 and to enact related amendments to the 5th Operating Agreement, without the consent of the Common Members. Plaintiffs explain in their Complaint why these actions were not authorized, with reference to specific provisions of the 5th Operating Agreement and the pertinent facts. In their motions, Defendants advance different facts and contract provisions. Because of the importance of these issues, Plaintiffs summarize them here.

The 5th Operating Agreement does not authorize the re-classification or conversion of Preferred Units into an increased number of Common Units without the consent of the Common Members. The 5th Operating Agreement specifically addresses conversion of Preferred Units in two sections, and it is undisputed that neither section applies here.

First, Section 3.1(f)(xi) allows Preferred Members to convert their Preferred Units to Common Units using the Common Equivalent Ratio, which was 1:1 at the relevant time. Complaint ¶ 37; *see* Declaration of Jacob Goldberg in Support of Defendants' Motions to Dismiss (Dkt. No. 19) ("Goldberg Decl."), Ex. 1 (5th Operating Agreement). It is undisputed that Defendants did not convert pursuant to Section 3.1(f)(xi) at a ratio of 1:1. Instead, each Preferred Unit was re-classified into at least 1.5576 and as many as 1.6303 Common Units, depending on the class of Preferred Unit re-classified (the "Preferred Conversion").[3] Complaint ¶ 49.

Second, Section 9.4 provides for conversion of all Units in the event of a conversion by NuScale of its corporate form, from LLC to corporation. *See* Goldberg Decl., Ex. 1 at § 9.4(b)-(c). It is also undisputed that Defendants did not convert pursuant to Section 9.4.

---

[3] The re-classification was a conversion, and Defendants refer to this transaction as "the 'Conversion'" in their motion. NuScale Motion at 2-3.

Page 2 – **PLAINTIFFS' OMNIBUS RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

No other provision of the 5th Operating Agreement authorizes conversion of Preferred Units. Defendants do not point to any such provision. Therefore, at a minimum, Plaintiffs state a claim for breach of the 5th Operating Agreement based upon Defendants' unauthorized conversion of the Preferred Units.

Furthermore, Section 14.3(aa) of the 5th Operating Agreement prohibits amendments of the rights of Common Members without their consent, voting as a separate class. Complaint ¶ 40; *see* Goldberg Decl., Ex. 1. In May 2022, Defendants amended the 5th Operating Agreement over Plaintiffs' objections, and replaced it with the 6th Operating Agreement. Complaint ¶¶ 44, 46; *see* Goldberg Decl., Ex. 2 at Ex. H (6th Operating Agreement). These amendments diminished the Common Members' voting, distribution and other rights that are protected from amendment in Section 14.3. *Id*. ¶¶ 45, 47. It is undisputed that Common Members were not afforded a vote, as a separate class, on the amendments. *Id*. ¶ 46.

Defendants attempt to sidestep the claims pleaded by Plaintiffs by advancing purported defenses and requesting a ruling on those defenses. Defendants' primary argument is that their actions were authorized by Section 3.1(d), which allowed the Company to "create and/or issue Equity Securities." Defendants did not make the preferred conversion, or the amendments, pursuant to Section 3.1(d). Prior to effecting the conversion and amendments, in response to Plaintiffs' objections and demand for a vote, NuScale set forth the basis for the conversion and amendments in a letter to Plaintiffs. Declaration of Timothy DeJong in Support of Plaintiffs' Omnibus Response to Defendants' Motions to Dismiss ("DeJong Decl."), Ex. 1. Nowhere in that letter does NuScale recite Section 3.1(d) or assert that Section 3.1(d) justified its actions. Defendants' new argument based upon Section 3.1(d) is an afterthought.

Furthermore, Section 3.1(d) does not defeat Plaintiffs' claims. Plaintiffs do not allege that Defendants breached the contract by creating or issuing securities. Plaintiffs allege that *existing* Preferred Units were *re-classified* as Common Units (a fact that Defendants do not dispute). That is, the already-issued Preferred Units were re-classified as Common Units.

Page 3 – **PLAINTIFFS' OMNIBUS RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

Section 3.1(d) says nothing about re-classifying units.

Plaintiffs dispute these and the other defenses advanced in Defendants' motions, but Plaintiffs are not required to do so in their pleading. Furthermore, Defendants' arguments present disputed issues of fact and interpretation of the contract. Motions to dismiss are not a vehicle to resolve disputed facts or interpretations of a contract. Plaintiffs request that the Court deny Defendants' Motions to Dismiss. In the alternative, Plaintiffs request leave to amend to correct any perceived pleading deficiency.

## II.    STATEMENT OF FACTS

The facts alleged in the Complaint, construed in the light most favorable to Plaintiffs,[4] are summarized as follows:

NuScale is an Oregon limited liability company. Complaint ¶ 30. Prior to the events at issue in this lawsuit, NuScale's membership interests consisted of Common Units and six classes of Preferred Units. *Id.* ¶ 3. NuScale also issued options to purchase Common Units ("Common Unit Options"). *Id.* Also prior to these events, Fluor held a majority interest in the Company and a majority of the Preferred Units, and controlled NuScale's Board of Managers (the "Board"). *Id.* ¶ 4. After Fluor became involved with NuScale, both Fluor and NuScale promised NuScale employees that when the Company reached a sufficient enterprise value, their Common Units and Common Unit Options would achieve parity on a per-unit fully diluted basis with the Preferred Units. *Id.* ¶ 5.

---

[4] Defendants attempt to cast their "statements of facts" in the light most favorable to Defendants and add their own alleged facts not found in the Complaint, and those statements of fact should be disregarded.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

At the relevant time, NuScale was governed by the 5th Operating Agreement. *Id.* ¶ 36.[5] All Plaintiffs, except Jack A. Bailey, and all Defendants are parties to the 5th Operating Agreement. *Id.* The 5th Operating Agreement provided for Preferred Units and Common Units, and Section 3.1(f)(xi) expressly provided that Preferred Members could convert Preferred Units "into a number of Common Units equal to the Common Equivalent Ratio in effect at the time of conversion." *Id.* ¶ 37. The Common Equivalent Ratio in effect at the time of the relevant events was 1:1. *Id.* ¶ 38.

The 5th Operating Agreement guaranteed a class vote to Common Members under certain circumstances, giving them protections against certain amendments to their rights and requiring their vote on such amendments. *Id.* ¶ 39. Specifically, Section 14.3 of the 5th Operating Agreement states, in relevant part, that:

> Subject to the right of the Company pursuant to Section 3.1(d) to amend this Agreement in connection with the creation and/or issuance of Equity Securities in accordance with the terms hereof, … (aa) any amendment to Sections 3.1(g), 4.1(a)(iii), 4.1(a)(iv), 4.1(a)(v) or 12.2(c), or this clause (aa) to the proviso of Section 14.3 (other than any amendment to such Sections and clause (aa) pursuant to Section 3.1(d) in connection with the creation and/or issuance of Equity Securities), shall also require the written consent of the Members holding a majority of the Common Units, consenting as a separate class.

*Id.* ¶ 40. Sections 3.1(g), 4.1(a)(iii), 4.1(a)(iv), 4.1(a)(v), 12.2(c), and 14.3(aa) (collectively, the "Provisions Requiring Consent") address the voting rights, distribution rights, and other rights of Common Members. *Id.* ¶ 41.

---

[5] The 5th Operating Agreement was submitted as Exhibit 1 to the Declaration of Jacob Goldberg in Support of Defendants' Motions to Dismiss ("Goldberg Decl."). Plaintiffs do not oppose the Court taking judicial notice of and reviewing the documents included in the Goldberg Declaration.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

In December 2021, NuScale and the Preferred Member Defendants voted to replace the 5th Operating Agreement with a new 6th Operating Agreement. *Id*. ¶ 44. The 6th Operating Agreement became effective on May 2, 2022. *Id*. ¶ 44. The 6th Operating Agreement amended and/or replaced each of the Provisions Requiring Consent. *Id*. ¶ 45.[6] Section 3.1(g), and the Common Members' voting rights, were eliminated entirely by the amendments. *Id*. The amendments to Sections 4.1(a)(iii), 4.1(a)(iv), 4.1(a)(v), 12.2(c) and 14.3(aa) of the 5th Operating Agreement are reflected directly in Sections 3.1, 9.3 and 4.1(f), respectively, of the 6th Operating Agreement. *Id*. Defendants did not hold a vote of the Common Members as a separate class nor did the Common Members consent to the amendments to the 5th Operating Agreement (as reflected in the 6th Operating Agreement), despite the plain language of Section 14.3(aa) and the fact that certain Plaintiffs demanded a class vote. *Id*. ¶ 46.

Defendants' unilateral amendments to the 5th Operating Agreement include a recapitalization set forth in Section 2.1(c) of the 6th Operating Agreement:

> Recapitalization. Immediately upon the effectiveness of this Agreement and without any action required on the part of the Company or any Member, (i) each Series A Preferred Unit, Series A-1 Preferred Unit, Series A-2 Preferred Unit, Series A-3 Preferred Unit, Series A-4 Preferred Unit, Series A-5 Preferred Unit and Common Unit (each, as defined in the Fifth Operating Agreement) of the Company issued and outstanding immediately prior to the effective time of this Agreement *shall be re-classified* into 1.5818, 1.5818, 1.5636, 1.5576, 1.5818, 1.6303, and 1.00, Common Units of the Company, respectively, and immediately after such reclassification (ii) each Common Unit issued and outstanding immediately prior to the Effective Time (including each Common Unit issued pursuant to the immediately preceding clause (i)) shall be re-classified into a number of Class B Units equal to the Exchange Ratio (as defined in the Merger Agreement) (collectively, the "Recapitalization").

*Id*. ¶ 47 (emphasis added). In the first step of the recapitalization, each existing Preferred Unit was re-classified, without any further action, into 1.5818, 1.5576, 1.5636 or 1.6303 Common Units, and each existing Common Unit was re-classified into 1.00 Common Units. The re-

---

[6] The 6th Operating Agreement is Exhibit 2-H to the Goldberg Declaration.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

classification substantially increased Preferred Members' share of Common Units and diluted Common Members' share of Common Units. *Id.* ¶¶ 47–48.

In the 6th Operating Agreement, Defendants also restructured the Common Unit Options, which are governed by individual unit option agreements and the Option Plan. *Id.* ¶ 51. Section 8.1 of the Option Plan states, in part:

> 8.1 ***Unit Splits, Distributions, Etc.*** <u>If the outstanding Common Units of the Company are hereafter</u> increased or decreased or changed into or <u>exchanged for a different number or kind of units or other securities of the Company by reason of any</u> split, combination of units, distribution payable in units, <u>recapitalization or reclassification,</u> appropriate adjustment shall be made in the number and kind of units available for grants under the Plan and in all other unit amounts set forth in the Plan. In addition, appropriate adjustment shall be made in the number and kind of units subject to Unit Awards as to which units have not been issued and as to which outstanding options, or portions thereof then unexercised, shall be exercisable, <u>so that the holder's proportionate interest before and after the occurrence of the event is maintained</u>. …

*Id.* ¶ 52 (emphasis added).[7] In other words, the Unit Option Agreements and the Option Plan required that Option Holders' "proportionate interest before and after the occurrence" of any "recapitalization or reclassification" had to be "maintained." Option Holders received a lesser proportional interest as a result of the re-classification than they had prior to the Restructuring. *Id.* ¶ 53.

The disproportionate conversion ratios applied in the re-classification increased the ownership interests of Preferred Members and decreased the ownership interests of Common Members and holders of Options. *Id.* ¶ 13. When a merger transaction was completed after the re-classification and NuScale's shares became publicly traded, Plaintiffs and other Common Members and Option Holders received fewer shares in the merged company than they were entitled to, and Defendants and other former Preferred Members received more shares than they were entitled to. *Id.* These shares have substantial value, having been valued at $10 at the time

---

[7] The Option Plan is Exhibit 6 to the Goldberg Declaration.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

of the re-classification and trading as high as $15.85 per share. *Id*. The total damages to Plaintiffs and the class exceed $100 million. *Id*. ¶ 56.

Defendants acted in bad faith and did not deal fairly with the Common Members and Option Holders in the performance of the contract. *Id*. ¶¶ 5, 43, 55. Defendants' actions in converting the Preferred Units at a ratio disproportionately favorable to the Preferred Members were contrary to Defendants' promises and statements to NuScale's employees that the Common Units would achieve parity with the Preferred Units on reaching a sufficient enterprise value, which value was reached at the relevant time. *Id*. ¶ 5. Defendants did not disclose the disproportionate conversion at the time they announced the transactions. *Id*. ¶ 43. When Plaintiffs informed NuScale that they intended to seek legal recourse, NuScale threatened to report Plaintiffs for insider trading if they exercised certain rights that all holders of Units were authorized to exercise. *Id*. ¶ 55.

## III. LEGAL STANDARDS

### A. Motions to Dismiss

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (omission in original). A complaint should be sustained as long as it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). All allegations of material fact must be taken as true and construed in the light most favorable to the plaintiffs. *Am. Family Ass'n, Inc. v. City & Cnty. of S.F.*, 277 F.3d 1114, 1120 (9th Cir. 2002). Indeed, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

The Court's review is limited to the allegations of the complaint, documents referred to in the complaint, and matters appropriate for judicial notice. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

**B.      Contract Interpretation Under Oregon Law**

Defendants do not address Oregon's legal framework for interpreting contracts. Oregon courts follow a three-step process to interpret contractual provisions. *Yogman v. Parrott*, 325 Or. 358, 361, 937 P.2d 1019 (1997). The court first "examines the text of the disputed provision, in the context of the document as a whole," to determine whether it is ambiguous. *Id.*; *see also* ORS 42.230 ("In the construction of an instrument, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all."). Whether a contractual provision is ambiguous is a question of law, as is the interpretation of an *un*ambiguous provision. *Yogman*, 325 Or. at 361. A provision is ambiguous "if it is susceptible to more than one reasonable interpretation." *Madson v. W. Or. Conference Ass'n of Seventh-Day Adventists*, 209 Or. App. 380, 384, 149 P.3d 217 (2006). "The court must, if possible, construe the contract so as to give effect to all of its provisions," *Williams v. RJ Reynolds Tobacco Co.*, 351 Or. 368, 379, 271 P.3d 103 (2011), but courts will find an ambiguity if several provisions of a contract are inconsistent, *Madson*, 209 Or. App. at 384.

At step one, courts often use dictionary definitions to interpret the text. *See Yogman*, 325 Or. at 362; *Westar Elec. Co. v. Westar Acquisition Corp.*, 177 Or. App. 174, 181, 33 P.3d 718 (2001). Courts may also look to some extrinsic evidence to determine whether an ambiguity exists, including "the circumstances under which [a contract] was made, including the situation of the subject and of the parties." *ACN Opportunity, LLC v. Emp't Dep't*, 362 Or. 824, 839, 418 P.3d 719 (2018) (quoting ORS 42.220 and citing *Abercrombie v. Hayden Corp.*, 320 Or. 279, 292, 883 P.2d 845 (1994)).

Page 9 – **PLAINTIFFS' OMNIBUS RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

If a provision is *un*ambiguous, the court construes its meaning as a matter of law and the analysis ends there. *Yogman*, 325 Or. at 361; *Gemstone Builders, Inc. v. Stutz*, 245 Or. App. 91, 96, 261 P.3d 64 (2011). But if the court concludes the contractual provision is ambiguous, the *trier of fact*[8] next considers extrinsic evidence of the contracting parties' intent. *Yogman*, 325 Or. at 363; *see also* ORS 41.740 (extrinsic evidence is admissible "to explain an ambiguity, intrinsic or extrinsic, or to establish illegality or fraud"). Such extrinsic evidence may include evidence of the "circumstances underlying the formation of the agreement" and evidence of how the contracting parties conducted themselves in accordance with the agreement. *Petrillo v. Pub. Emps. Ret. Bd.*, 286 Or. App. 200, 209, 398 P.3d 1006, *review denied*, 362 Or. 175 (2017); ORS 42.220 ("In construing an instrument, the circumstances under which it was made, including the situation of the subject and of the parties, may be shown so that the judge is placed in the position of those whose language the judge is interpreting."); *Yogman*, 325 Or. at 364 ("[T]he parties' practical construction of an agreement may hint at their intention.").

Finally, "[i]f the meaning of a contractual provision remains ambiguous after the first two steps have been followed, the court relies on appropriate maxims of construction." *Yogman*, 325 Or. at 364. This means either the court will address step three, if no extrinsic evidence exists, or the jury will receive maxims in the form of jury instructions.

## IV.    DETAILED ARGUMENT

### A.    Plaintiffs State an Actionable Claim for Breach of the 5th Operating Agreement (Fourth Claim for Relief).

"The elements of a breach-of-contract claim are a valid contract binding the parties; the plaintiffs' performance under the contract; the defendant's nonperformance; and resulting damages." 17B C.J.S. Contracts § 830; *see also Nw. Nat. Gas Co. v. Chase Gardens, Inc.,* 333 Or. 304, 313 n. 3, 39 P.3d 846 (2002) (elements of breach of contract in Oregon include

---

[8] As discussed in more detail below, the jury will address step two, unless the court concludes there is no competing extrinsic evidence to send to the jury.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

existence of contract, performance by plaintiff, defendant's failure to perform, and damages).

Plaintiffs allege each of these elements: a contract—the 5th Operating Agreement—binding the parties (Complaint ¶ 82); that Plaintiffs fully performed under the contract (*Id*. ¶ 83); that Defendants breached the contract by re-classifying the Preferred Units using a ratio that exceeded 1:1 and amending the contract without the consent of the Common Members (*Id*. ¶ 84); and resulting damages of at least $20 million (*Id*. ¶ 85). Thus, Plaintiffs have pleaded an actionable claim for breach of the 5th Operating Agreement, and this motion should be denied.

Defendants do not challenge Plaintiffs' allegations that they re-classified all Preferred Units by ratios that exceed 1:1, that they amended the 5th Operating Agreement (including the Provisions Requiring Consent) without a separate vote of the Common Members, or that Plaintiffs' interests were diluted. Rather, Defendants attempt to confuse the issues and obtain rulings on various defenses.

### 1. The Preferred Conversion Breached the Contract.

Plaintiffs allege that the conversion, or re-classification, of Preferred Units to Common Units at ratios of 1.5818:1 - 1.6303:1 breached the contract. No provision of the 5th Operating Agreement authorizes such a conversion. Defendants cite no such provision.

The contract contains two provisions for conversion of Preferred Units, in Sections 3.1(f)(xi) and 9.4. Section 3.1(f)(xi) allows Preferred Members to convert their Preferred Units to Common Units using the Common Equivalent Ratio. Section 9.4 provides for conversion of all Units in (a) a qualified public offering or (b) a conversion of NuScale's corporate form from LLC to corporation. Those provisions do not apply here, and Defendants do not contend otherwise.

There being no provision of the 5th Operating Agreement that authorizes the conversion implemented by Defendants, Plaintiffs state a claim for breach of contract on this basis.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

2.  **The Amendments Relating to the Preferred Conversion Breached the Contract.**

Defendants also breached the contract when they amended the 5th Operating Agreement to implement the Preferred Conversion.  Section 14.3 of the 5th Operating Agreement states, in relevant part:

> **Amendment**.  Subject to the right of the Company pursuant to <u>Section 3.1(d)</u> to amend this Agreement in connection with the creation and/or issuance of Equity Securities in accordance with the terms hereof, this Agreement may be amended or modified, or any provision waived, only with the written consent of (a) the Members holding a majority of the votes of the issued and outstanding Common Units and Preferred Units, consenting together as a single class (on an As-Converted Basis) and (b) the Members holding a majority of the Preferred Units consenting as a separate class; *provided*, *however*, *that . . . (aa) any amendment to <u>Sections 3.1(g)</u>, <u>4.1(a)(iii)</u>, <u>4.1(a)(iv)</u>, <u>4.1(a)(v)</u> or <u>12.2(c)</u>, or this clause (aa) to the proviso of <u>Section 14.3</u> (other than any amendment of such Sections and clause (aa) pursuant to <u>Section 3.1(d)</u> in connection with the creation and/or issuance of Equity Securities), shall also require the written consent of the Members holding a majority of the Common Units, consenting as a separate class. . . .*

(Italics added).

Defendants argue that Section 14.3 does not "appl[y] at all."  Motion to Dismiss by Defendant NuScale Power, LLC ("NuScale Motion") at 3.  To the contrary, Section 14.3 unambiguously requires "written consent of the Members holding a majority of the Common Units, consenting as a separate class," for any amendment to the provisions specified in subsection (aa).  Defendants do not contend that this provision is ambiguous.  Plaintiffs allege that Defendants amended the sections specified in Section 14.3(aa) and that the amendments were not approved by a majority vote of the Common Members.  Defendants do not appear to dispute those factual allegations.  Thus, Section 14.3 applies and Plaintiffs state a claim for breach based upon the unauthorized amendments.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

### a. The Single Exception Pursuant to Section 3.1(d) Does Not Apply.

Section 14.3 expresses a single exception relating to the "creation and/or issuance of Equity Securities" pursuant to Section 3.1(d). As explained in the Introduction, Defendants did not make the disputed amendments pursuant to Section 3.1(d). Before the amendments took effect, NuScale set forth the basis for the amendments in a letter to Plaintiffs. That letter does not cite Section 3.1(d) or assert that provision as the purported justification for the amendments. *See* DeJong Decl., Ex. 1. Defendants now contend that Section 3.1(d) applies as a matter of law. The Court should reject this argument.

Section 3.1(d) of the 5th Operating Agreement states as follows:

> **Issuance of Additional Equity Securities**. Subject to compliance with <u>Section 3.1(e)</u> and <u>Section 5.1</u>, the Board shall have the right to cause the Company to create and/or issue Equity Securities of the Company (including types, classes or series of Units having such rights and privileges which are different from, senior to or more favorable than those of existing types, classes and series of Units), in which event, (i) except as provided in <u>Section 3.1(f)</u>, all outstanding Units shall be diluted on a pro rata basis with respect to any such issuance, (ii) the Board shall have the power to amend this Agreement to reflect such creation, and to make any such other amendments as the Board reasonably and in good faith deems necessary to reflect such creation (including amending this Agreement to create and authorize a new type, class or series of Units and to add the terms of such new type, class or series of Units, including distribution and voting rights which may be different from, senior to or more favorable than those of the other existing types, classes and series of Units), in each case without the approval or consent of any Member; <u>provided</u>, that if any Member's rights and privileges under this Agreement would be adversely affected in a manner which is disproportionate to other Members holding the same type, class or series of Units, then such Member's consent shall be required, and (iii) the CEO Manager shall have the power to amend or cause the amendment of <u>Schedule A</u> attached hereto to reflect any such creation, issuance and dilution. . . .

Section 3.1(d) applies to the creation and issuance of equity securities. Historically, NuScale has used this provision to create new classes of Preferred Units. Section 3.1(d) says nothing about changes to *existing* equity securities, including a reclassification or a conversion of existing Preferred Units into existing Common Units. The subject of Plaintiffs' claims is

Page 13 – **PLAINTIFFS' OMNIBUS RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

Defendants' re-classification of all existing securities, not the creation or issuance of new securities.

Section 2.1(c) of the document that contains the amendments—the *6th* Operating Agreement—confirms, unambiguously, that Defendants re-classified existing securities:

> <u>Recapitalization</u>.  Immediately upon the effectiveness of this Agreement and without any action required on the part of the Company or any Member, (i) each Series a Preferred Unit, Series A-1 Preferred Unit, Series A-2 Preferred Unit, Series A-3 Preferred Unit, Series A-4 Preferred Unit, Series A-5 Preferred Unit and Common Unit (each, as defined in the Fifth Operating Agreement) of the Company issued and outstanding immediately prior to the effective time of this agreement *shall be re-classified* into 1.5818, 1.5818, 1.5636, 1.5576, 1.5818, 1.6303, and 1.00, Common Units of the Company, respectively ….

(Italics added).  To reclassify, which is to redefine something that is pre-existing, is not to "create" or "issue".  *See, e.g., Webster's Third New Int'l Dictionary* 1896 (unabridged ed 2002) (defining "reclassify" as "to group or segregate into classes again on a new basis" or "to move from one class, classification, or category to another"); *id.* at 532 (defining "create," in part, as "to bring into existence: make out of nothing and for the first time"); *id.* at 1201 (defining "issue," in part, as "to cause to appear or become available by officially putting forth or distributing or granting or proclaiming or promulgating"); *see also Yogman*, 325 Or. at 362 (relying on Webster's Third New International Dictionary for definitions in a contract case).

Defendants argue that the exception applies even if Section 3.1(d) did not authorize the Preferred Conversion, because the 6th Operating Agreement included other amendments to reflect the creation of new Class A and Class B Units.  This argument would cause the exception to swallow the protections of Section 14.3.

The exception in Section 14.3 is for amendments "pursuant to Section 3.1(d) in connection with the creation and/or issuance of Equity Securities."  This means that the amendment must be pursuant to Section 3.1(d).  It does not mean that any amendment is authorized if it is "in connection with" another amendment that would, independently, comply with Section 3.1(d).  The "in connection with" language in Section 14.3 is not substantive and

Page 14 – **PLAINTIFFS' OMNIBUS RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

does not expand Section 3.1(d). "[I]n connection with the creation and/or issuance of Equity Securities" merely describes the types of amendments that are provided for "pursuant to Section 3.1(d)".

Defendants assert that "*the entire purpose* of the 6th Operating Agreement was to change the capital structure of the Company and issue" the Class A and Class B Units. NuScale Motion at 15 (emphasis in original). That is not correct. A material purpose of the 6th Operating Agreement was to implement the Preferred Conversion at enhanced conversion ratios selected by Defendants. The conversion ratios selected by Defendants have nothing to do with any purpose to create Class A and Class B Units. Defendants could have converted the Preferred Units at the 1:1 ratio provided for in the 5th Operating Agreement and still created the Class A and Class B Units.

NuScale's interpretation of Section 14.3 is not reasonable in the context of the contract as a whole. *See Yogman*, 325 Or. at 361 (the court "examines the text of the disputed provision, in the context of the document as a whole"); *Madson*, 209 Or. App. at 384 (a contract provision is ambiguous "if it is susceptible to more than one reasonable interpretation."). The contract expresses an intention that the Common Members be protected from amendments to their rights, and it specifically addresses how Preferred Units could be converted into Common Units. Those provisions would be meaningless under Defendants' interpretation. For example, NuScale could issue a single additional Preferred or Common Unit, make any amendment it desired, and claim that the amendment was "in connection with" the issuance of equity securities.

Because the Preferred Conversion and related amendments were not made "in connection with the creation and/or issuance of Equity Securities," the exception in Section 14.3(aa) does not apply to excuse Defendants' breach of contract. In the alternative, the contract is ambiguous and requires consideration of extrinsic evidence of the parties' intent by the trier of fact. *See Yogman*, 325 Or. at 363.

Page 15 – **PLAINTIFFS' OMNIBUS RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

### b. Section 14.3 Does Not Provide an Exception for Amendments Made Pursuant to a Merger.

NuScale also argues that Section 14.3 does not apply because the amendments at issue were made pursuant to a merger. NuScale Motion at 16–22. Section 14.3(aa) addresses the vote required to make amendments to Common Members' rights. It does not provide an exception for amendments pursuant to a merger.

Defendants' argument that a default statutory rule, allegedly expressed in ORS 63.487(1)(a), applies "if the 5th Operating Agreement does not provide otherwise" also fails. NuScale Motion at 19. First, it fails because the 5th Operating Agreement <u>does</u> provide otherwise, in Section 14.3(aa). It is not necessary for a contract provision that broadly governs "any" amendment to the Common Members' rights, with only one exception, to explicitly state that "any" amendment includes amendments made pursuant to a merger.

Second, the argument would fail even without Section 14.3 because ORS 63.487 does not express the default rule claimed by Defendants, which is that only a majority vote of all members is required to approve <u>amendments to the operating agreement</u> in connection with a merger. Rather, ORS 63.487 specifies the vote required to approve <u>a plan of merger</u> if the operating agreement does not provide otherwise. Plaintiffs do not contend that Common Members had a right to a separate vote to approve a merger. Plaintiffs contend that they had a right, pursuant to Section 14.3(aa), to approve the Preferred Conversion and related amendments to the operating agreement. ORS 63.487 does not address the vote required to approve amendments to an operating agreement. Approval of amendments to the operating agreement is addressed in ORS 63.444, which states: "Except as otherwise provided in ORS 63.441 or in the articles of organization or any operating agreement, all amendments to the articles of organization or any

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

operating agreement must be approved unanimously by the members. …"[9]  ORS 63.487 does not

provide an exception for amendments pursuant to a merger.

### c.      Section 5.1(d)(xiv) Does Not Apply.

Defendants also assert Section 5.1(d) of the 5th Operating Agreement applies.

Defendants appear to argue that this section requires only the Preferred Members to approve

amendments pursuant to a merger.  NuScale Motion at 20.  That argument fails because Section

5.1(d)(xiv) only protects *Preferred Members* from amendments they do not approve:

> **Preferred Units Protective Provisions**. Notwithstanding anything to the contrary
> contained herein, at any time when any Preferred Units are outstanding, the
> Company shall not, and shall not permit any other Company Party to, either directly
> or indirectly by amendment, merger, consolidation or otherwise, do any of the
> following without (in addition to any other vote required by this Agreement) the
> written consent or affirmative vote of the holders of at least a majority of the then-
> outstanding Preferred Units, voting together as a single class: * * * (xiv) amend any
> provision of this Agreement.

As is plain on the face of this provision, this "Preferred Units Protective Provision" is a

protective provision for Preferred Members.  It protects the Preferred Members by prohibiting

the Company from amending the operating agreement, by "merger, consolidation or otherwise,"

without the consent of a majority of the Preferred Members.  Section 5.1(d)(xiv) says nothing

about what approval is required for amendments to *Common Members'* rights.  Section 14.3(aa)

protects Common Members from any amendment to specified rights.

Section 14.3(aa) does not provide an exception for amendments pursuant to a plan of

merger.  Defendants ask the Court to insert such an exception, arguing that Section 5.1(d)(xiv)

demonstrates that the parties would have included the word "merger" in Section 14.3(aa) if they

---

[9] *See also* ORS 63.441 (allowing managers of manager-managed LLCs to amend articles of
incorporation under certain limited circumstances); ORS 63.130(3)(a) ("Unless otherwise
provided in the articles of organization or any operating agreement, the following matters of a
member-managed or a manager-managed limited liability company require the consent of all of
the members: * * * The amendment of the operating agreement or the articles of organization
under ORS 63.444.").

Page 17 – **PLAINTIFFS' OMNIBUS RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

had intended it to apply to amendments by merger.  NuScale Motion at 20.  It would be improper for the Court to rule that Section 14.3(aa)'s application to "any amendment" excludes amendments by merger.  The Court certainly cannot make such a ruling on a motion to dismiss.

The 5th Operating Agreement is not ambiguous as to the parties' intent.  Section 5.1(d)(xiv) expresses the parties' intent to protect Preferred Members from any amendment they do not approve, without exception.  Section 14.3(aa) establishes the parties' intent to protect Common Members from any amendment to the specified rights without their approval, with one exception pursuant to Section 3.1(d).  There is nothing inconsistent about these provisions, which allow each group of members to protect their rights.  Defendants' argument to import a limitation on the scope of Section 14.3(aa), which applies broadly to "any amendment," should be rejected.

### d. NuScale Is an Oregon LLC and Not Governed by Delaware Law.

NuScale also resorts to Delaware law that is plainly inapplicable, in a further attempt to change the terms of Section 14.3.  NuScale is an Oregon LLC governed by Oregon law, not Delaware corporate law.  Complaint ¶ 30.  Furthermore, the Delaware case NuScale relies upon addresses the rights of <u>preferred shareholders</u> of a <u>corporation</u> to vote in connection with a merger, not the right of <u>common members</u> of an <u>LLC</u> to vote on amendments to the operating agreement that materially impact their rights.

NuScale relies on the Delaware case of *Elliot Associates, L.P. v. Avatex Corp.*, 715 A.2d 843 (Del. 1998) ("*Avatex*").  *Avatex* held that preferred shareholders are entitled to a class vote where a merger results in an amendment of the company's certificate only where the certificate "adds the terms 'whether by merger, consolidation, or other' and a merger results in an amendment, alteration or repeal that causes an adverse effect on the preferred."  *Id*. at 855.  *Avatex* does not apply here, for a number of reasons.

The most critical difference between the two cases is that *Avatex* was decided under Delaware law, not Oregon law.  As discussed above, Delaware law contains two statutory provisions that might apply to amendments in the context of mergers: 8 Del. C. § 242, entitled

Page 18 – **PLAINTIFFS' OMNIBUS RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

"Amendment of certificate of incorporation after receipt of payment for stock; nonstock corporations," and 8 Del. C. § 251, entitled "Merger or consolidation of domestic corporations." Deciding which provision matters because, as the *Avatex* court discussed, Section 242 provides for class votes on amendments and Section 251 does not provide for class votes on mergers. And Section 251 expressly allows plans of mergers to effect amendments. *See* 8 Del. C. § 251(b)(3) (providing that in the case of a merger, the agreement must state "such amendments or changes in the certificate of incorporation of the surviving corporation as are desired to be effected by the merger (which amendments or changes may amend and restate the certificate of incorporation of the surviving corporation in its entirety), or, if no such amendments or changes are desired, a statement that the certificate of incorporation of the surviving corporation shall be its certificate of incorporation"); *see also In re Kinder Morgan, Inc. Corp. Reorganization Litig.*, CIV.A. 10093-VCL, 2014 WL 5667334, at *3 (Del. Ch. Nov. 5, 2014) (in the limited partnership context, because statutory law allows an agreement of merger to "effect" amendments, "if an amendment to a partnership agreement is implemented by merger, the limited partnership need only comply with the requirements for effecting a merger, not any separate requirements for effecting a standalone amendment to the limited partnership agreement").

Furthermore, Delaware's "bedrock doctrine of independent legal significance," only requires that a corporation comport with one statutory provision when taking action. *See* 18 C.J.S. Corporations § 49 ("In some states, under the 'doctrine of independent legal significance,' action taken under one article of the corporation code is legally independent, and its validity is not dependent upon the requirements of other unrelated sections under which the same result may be attained by different means. Thus, the acts of a corporation taken in compliance with the provisions of one section of the state general corporation law need not be tested against the requirements of another, though the result is the same."); *see also Avatex*, 715 A.2d at 853 n. 48. As the *Avatex* court noted, the doctrine of independent legal significance "establishes that class

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

voting rights granted under 8 Del. C. § 242(b)(2) and parallel contractual provisions in a

certificate do not apply in a merger and that only the provisions of 8 Del. C. § 251 and any

express certificate provisions need be satisfied." *Avatex*, 715 A.2d at 853 n. 48. Given prior

case law and the doctrine of independent legal significance, it was clear in *Avatex* that "that pure

amendment protection available to the First Series Preferred stockholders as granted by Section

242(b)(2) of the DGCL" does not generally give preferred stockholders a vote on a merger. *Id.*

at 853. Because Section 242 does not apply to mergers and Section 251 both allows mergers to

effect amendments and does not require class votes, the *Avatex* court held that drafters of

certificates of incorporation must include specific language to allow preferred stockholders to

vote on a merger under Delaware law.

However, the specific statutory context surrounding *Avatex* and other Delaware cases

simply does not apply here. As discussed above, Oregon law, as it pertains to our case, is

inapposite. Oregon's LLC Act requires that a plan of merger must set forth certain provisions,

but does not state that amendments to any provisions may be effected by a merger. *See* ORS

63.481(2)-(3); ORS 63.487(1)(a). Furthermore, no Oregon court has adopted the doctrine of

independent legal significance. It appears only Delaware and Kansas, and perhaps a few other

states, have done so. *See Kansas City Power & Light Co. v. W. Res., Inc.*, 939 F. Supp. 688, 692

(W.D. Mo. 1996) ("This doctrine, adopted in several states including Delaware and Kansas,

stands for the proposition that actions taken pursuant to the authority of various sections of the

law constitute acts of independent legal significance and their validity is not dependent on other

sections of an act.").

Another important difference is that *Avatex* involved the rights of preferred stockholders,

not common stockholders.[10] Under Delaware law, "[a]ny rights, preferences and limitations of

---

[10] Another difference is *Avatex* involved a corporation and this case involves an LLC. Notably, Oregon's statutes governing LLCs are much more flexible than Delaware's (or Oregon's statutes) governing corporations.

Page 20 – **PLAINTIFFS' OMNIBUS RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

preferred stock that distinguish that stock from common stock must be expressly and clearly stated, as provided by statute. Therefore, these rights, preferences and limitations will not be presumed or implied." *Avatex,* 715 A.2d at 852–53; *see also Warner Commc'ns Inc. v. Chris-Craft Indus., Inc*., 583 A.2d 962, 967 (Del. Ch.), *aff'd*, 567 A.2d 419 (Del. 1989) ("While the effort is to arrive at the intended meaning of the words employed, it is generally said that rights or preferences over common stock should be clearly expressed and not presumed."); *Greenmont Capital Partners I, LP v. Mary's Gone Crackers, Inc.*, CIV.A. 7265-VCP, 2012 WL 4479999, at *6 (Del. Ch. Sept. 28, 2012) ("This conclusion is consistent with the principle of Delaware corporation law that any rights or preferences of preferred stock must be expressed clearly."). This case law generally shows the context in which *Avatex* was decided, in which preferred shareholders' rights must be expressly spelled out in a governing document to exist at all.

*Avatex* stands for the narrow proposition that under Delaware law, drafters of a certificate of incorporation who intend for preferred stockholders to vote on a merger should clearly state so. It does not apply here. And for this reason, and the other reasons listed above, NuScale's arguments that Oregon's LLC Act, the rest of the 5th Operating Agreement, or Delaware case law somehow excuse Defendants' failure to comply with Section 14.3(aa) each fail.

> ### 3. Plaintiffs State Claims for Breach of the 5th Operating Agreement Against the Preferred Member Defendants.

The Preferred Member Defendants filed separate motions to dismiss. Many of their arguments are based upon the premise, disproved above, that there was no breach of contract. The Preferred Member Defendants argue that they are not liable for breach of the 5th Operating Agreement for the additional reasons that: (1) Plaintiffs do not allege any actionable conduct by the Preferred Member Defendants, and (2) the Preferred Members are protected from liability by exculpatory clauses in the 5th Operating Agreement. These arguments also fail.

Plaintiffs allege actionable conduct on the part of the Preferred Member Defendants. Plaintiffs do not, as they contend, assert only that the Preferred Member Defendants voted or that

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

they are liable for the Company's obligations or solely on the basis of being members of the LLC. Plaintiffs allege, or the documents submitted by Defendants confirm, that the Preferred Member Defendants:

- Signed the 5th Operating Agreement <u>as parties to the contract</u>. Complaint ¶ 82; Goldberg Decl., Ex. 1 (signature pages) ("IN WITNESS WHEREOF, the parties have entered into this Fifth Amended and Restated Operating Agreement ….");

- Converted their Preferred Units at a ratio greater than the contract allowed. Complaint ¶ 47;

- Voted to amend the 5th Operating Agreement. *Id.* ¶ 44;

- Signed the 6th Operating Agreement that implements the amendments. *Id.* ¶ 45; Goldberg Decl., Ex. 2 at Ex. H (signature pages); and

- Accepted the benefits of the breaches. Complaint ¶ 48.

In addition, the Company acted only after receiving approval from Defendants. *Id.* ¶ 44. Each of these facts is alleged or can readily be inferred from pleaded facts and the documents Defendants ask the Court to take judicial notice of.

Nor are the Preferred Defendants excused from liability pursuant to the purported exculpatory provisions in the 5th Operating Agreement. Section 6.1 states that members are not responsible for the Company's liabilities, but Plaintiffs seek to hold the Preferred Member Defendants responsible for their own liability and actions. Section 14.8 provides that it is not a lack of good faith or unfair dealing to exercise contractual rights, but Plaintiffs allege that the Preferred Member Defendants took action not authorized by the contract. Section 14.9 provides that a member is not responsible for another member's purchase or acquisition of units, which has no application here.

Finally, Plaintiffs do not allege that the Preferred Member Defendants are liable solely because they are members of the LLC, but rather as signatories and parties to the 5th Operating Agreement, which they breached as alleged in the Complaint. Accordingly, the Preferred

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Member Defendants' separate motions to dismiss the Fourth Claim for breach of the 5th Operating Agreement should be denied.

### 4. Plaintiffs Are Not Required to Plead or Prove that Common Members Would Have Rejected the Preferred Conversion or Amendments.

NuScale also argues that Plaintiffs have failed to allege nonspeculative damages. According to NuScale, Plaintiffs must plead and prove that a majority of the Common Units would have voted against the Merger in order to properly allege that the failure to hold a vote caused Plaintiffs' damages. NuScale Motion at 23–24. This argument turns the 5th Operating Agreement on its head and would, in effect, shift the Company's burden under the contract to hold a vote to those who were denied the opportunity of a vote. Defendants cite no case holding that the party deprived of a vote must prove how the vote would have turned out in the absence of the breach.

This argument is a factual one not appropriate at the motion to dismiss stage. Numerous courts have held that "[w]hether or not a plaintiff is entitled to contract damages, however, is a question of fact not fit for resolution at the pleadings stage." *Elkay Int'l Ltd. v. Color Image Apparel, Inc.*, No. CV1408028MMMVBKX, 2015 WL 13917733, at *14 (C.D. Cal. June 3, 2015); *see also Causey v. Portfolio Acquisitions, LLC*, No. CV 10-2781 KJM EFB, 2013 WL 246916, at *3 (E.D. Cal. Jan. 22, 2013) ("Although defendants contend that those allegations are too conclusory and speculative under *Twombly* and *Iqbal*, plaintiffs do specifically allege money damages, the amount of those damages, and that the damages resulted from NCC and Portfolio's violations. . . . Accordingly, defendants' motions to dismiss . . . must be denied").

With respect to Plaintiffs' claims asserting unauthorized amendments to the operating agreement, the failure to hold the required vote is itself a breach of the contract, regardless of whether any party can prove how that hypothetical vote would have turned out. Defendants breached the contract when they refused to hold a vote, unilaterally amended the contract, and implemented the Preferred Conversion. The measure of damages in this situation is the highest

Page 23 – **PLAINTIFFS' OMNIBUS RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

value of the securities from the time the owner has notice of the conversion to a reasonable period of time thereafter.  *See Lamb Bros. v. First State Bank*, 285 Or. 39, 54-55 and n. 4, 589 P.2d 1094 (1979) ("The damages on remand are to be calculated on the basis of the highest value the stock reached within a reasonable time after the" wrongful act).

NuScale's argument controverts what is required to show contract damages under Oregon law.  To prove contract damages, "a plaintiff must show that his or her harm was both the factual and the foreseeable consequence of the defendant's conduct." *Wilcher v. Amerititle, Inc.*, 212 Or. App. 498, 506, 157 P.3d 790 (2007).   "A defendant's conduct is the factual cause of all harm that would have not occurred but for the defendant's actions." *PacifiCorp v. Nw. Pipeline GP*, 879 F. Supp. 2d 1171, 1198 (D. Or. 2012).  Plainly, NuScale's actions in preventing a vote of the Common Members from occurring *at all* and thus forcing through amendments to the 5th Operating Agreement was the factual cause of the Common Members' damages.

NuScale's no-causation defense misunderstands the elements of a breach of contract claim, misstates the burden of proof, and is not appropriate at this stage.  Plaintiffs are not required to plead that a majority of Common Units would have voted against the Preferred Conversion and related amendments in a hypothetical vote that Defendants refused to hold.  In any event, it is a reasonable inference from Plaintiffs' allegations that the Common Members would have rejected these actions, which greatly benefited the Preferred Members at the expense of the Common Members.

**B.      Plaintiffs State an Actionable Claim for Breach of the Option Unit Agreements and Option Plan (Fifth Claim for Relief).**

NuScale argues that Plaintiffs' claim for breach of the Unit Option Agreements and Option Plan fails based on contractual interpretation arguments.  NuScale Motion at 25–30.

Section 8.1 of the Option Plan provides that, "[i]f the outstanding Common Units of the Company are hereafter increased or decreased or changed into or exchanged for a different number or kind of units or other securities of the Company *by reason of any* split, combination of

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

units, distribution payable in units, *recapitalization or reclassification*, . . . appropriate adjustment shall be made in the number and kind of units subject to Unit Awards as to which units have not been issued and as to which outstanding options, or portions thereof then unexercised, shall be exercisable, *so that the holder's proportionate interest before and after the occurrence of the event is maintained.*" Option Plan, § 8.1 (emphasis added). Thus, Option Holders must receive the same proportional interest they started with after an event, such as a recapitalization or reclassification, in which the outstanding Common Units are changed into a different number or kind of units. The Preferred Conversion was a reclassification of Preferred Units to Common Units which, applying the terms of Section 8.1, was an "exchange" of Common Units for a "different number or kind of units" "by reason of any … recapitalization or reclassification." Complaint ¶ 47; Goldberg Decl., Ex. 2 at Ex. H, §2.1(c). The Option Holders' proportional interest prior to the Restructuring was not, in fact, maintained after the Restructuring. Complaint ¶ 53; NuScale Motion at 29 ("It is true that, through the reclassification of the *Preferred Units* into Common Units, the value of the Common Units was diluted …." (emphasis in original)). Section 8.1 applies on its face to these facts.

Defendants argue that Section 8.1 does not apply because "Plaintiffs do not allege—nor could they—that 'Outstanding Common Units' were 'increased or decreased or changed' in any way." NuScale Motion at 29. This argument misstates Section 8.1, which applies not only to increases, decreases or changes to Common Units, but also where Common Units are "exchanged for a different number or kind of units … by reason of any … recapitalization or reclassification."[11]

---

[11] In a footnote, NuScale argues that Plaintiffs' allegations regarding the Restructuring are "inconsistent with the 'step transaction doctrine' recognized by Delaware and Oregon courts." NuScale Motion at 28 n. 9. Oregon courts have concluded that the step transaction doctrine does not apply where there is "a significant change in the interests of the parties." *Bishop v. Dep't of Revenue*, 13 Or. Tax 472, 476 (1996). In the only Oregon case to propose that the step transaction doctrine could apply outside of the tax context, this Court concluded, "[u]ltimately, application of the step transaction doctrine to the stock conversion is a question of fact which

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

NuScale argues that its actions were permissible under Section 8.2 of the Option Plan.

The relevant provisions of 8.2 read:

> 8.2 Corporate Transactions. Unless otherwise provided at the time of grant, in connection with the occurrence of any of the following events pursuant to which outstanding Common Units are converted into cash or other equity interests, securities or property (each, a "Transaction"): (i) a merger, combination, consolidation, plan of exchange or other reorganization, (ii) a sale of all or substantially all of the assets of the Company (in one transaction or a series of related transactions), or (iii) a dissolution of the Company, the Board of Managers may select from among the following for treatment of outstanding awards under the Plan with the right to treat each award in a different manner:

> 8.2-1 An outstanding award may be assumed by the surviving or acquiring company and converted into an equity interest or right to acquire an equity interest of the surviving or acquiring company in the Transaction with the terms (including the amount and type of equity subject thereto, any exercise price and vesting provisions) to be conclusively determined by the Board of Managers, taking into account the relative values of the companies involved in the Transaction and the exchange rate, if any, used in determining equity of the surviving or acquiring entity to be held by holders of equity of the Company following the Transaction.

NuScale argues that under these provisions, the Board of Managers was permitted to decide how to treat any outstanding options in the case of a merger. NuScale Motion at 26–28. But NuScale misconstrues Plaintiffs' allegations. Plaintiffs do not challenge the merger itself, but rather the Preferred Conversion and related amendments prior to the merger.

Section 8.1 applies to the facts pleaded by Plaintiffs. Therefore, Plaintiffs have properly alleged that NuScale's actions breached the Unit Option Agreements and Option Plan.

---

cannot be decided on a motion to dismiss or for judgment on the pleadings." *Kentrox, Inc. v. Bernstein*, No. 3:13-CV-01492 -ST, 2014 WL 4221592, at *10 (D. Or. May 9, 2014), *report and recommendation adopted in part, rejected in part sub nom. Kentrox, Inc. v. Berstein*, No. 3:13-CV-01492-ST, 2014 WL 4220929 (D. Or. Aug. 25, 2014); *see also Marks v. Dep't of Revenue*, No. TC-MD 050715D, 2007 WL 2162647, at *2 (Or. T.C. July 24, 2007) ("The application of the step transaction doctrine to Plaintiffs' transaction is a question of fact.").

Page 26 – **PLAINTIFFS' OMNIBUS RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

## C.      Plaintiffs State Actionable Claims for Equitable Relief (Second Claim for Relief)

The Preferred Member Defendants argue that Plaintiffs' claim for unjust enrichment, constructive trust, and equitable lien fails because it is subsumed by Plaintiffs' breach of contract claims.[12]  The Preferred Member Defendants misunderstand the nature of unjust enrichment claims under Oregon law and the facts underlying Plaintiffs' claims.

In *Larisa's Home Care, LLC v. Nichols-Shields*, 362 Or. 115, 128, 404 P.3d 912 (2017), the Oregon Supreme Court outlined the approach Oregon courts now take to restitution and unjust enrichment claims.  Prior to *Larisa's Home Care*, a party was required to show the following three elements to establish unjust enrichment: "a benefit conferred, awareness by the recipient that a benefit has been received and, under the circumstances, it would be unjust to allow retention of the benefit without requiring the recipient to pay for it."  *Jaqua v. Nike, Inc.*, 125 Or. App. 294, 298, 865 P.2d 442 (1993), *overturned by Larisa's Home Care*, 362 Or. 115. But in *Larisa's Home Care*, the Oregon Supreme Court rejected this three-step approach, instead concluding that "[i]n lieu of applying the formula in *Jaqua*, Oregon courts should examine the established legal categories of unjust enrichment as reflected in Oregon case law and other authorities to determine whether any particular enrichment is unjust" on a case-by-case basis. *Larisa's Home Care*, 362 Or. at 127.

One such authority the Court relied on was the Restatement (Third) of Restitution and Unjust Enrichment.  The Restatement (Third) "contains a statement of four general principles, … and then 44 sections addressing the types of circumstances in which liability in restitution is recognized."  *Larisa's Home Care*, 362 Or. at 128.  The Court looked to Oregon case law and the Restatement (Third) to decide whether a particular claim fell under one of those principles or

---

[12] The Preferred Member Defendants also repeat their arguments that they are not liable because "the exculpation clauses in the 5th Operating Agreement preclude Plaintiffs' contract claims", and the Preferred Member Defendants "are not alleged to have taken any wrongful acts."  Those arguments are addressed in Section IV.A.3., *supra*.

Page 27 – **PLAINTIFFS' OMNIBUS RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

sections. *See id.* at 133 ("At least one of plaintiff's allegations in this action falls squarely within the categories recognized by Oregon case law and treatises to involve unjust enrichment: plaintiff alleges that [defendant's estate] has been benefited by fraud." (citing Restatement (Third) of Restitution & Unjust Enrichment § 13 comment a (2010))).

The Restatement (Third) contains at least two provisions that apply to Plaintiffs' allegations in the Complaint. First, under Restatement (Third) of Restitution and Unjust Enrichment § 39 (2011):

> (1) If a deliberate breach of contract results in profit to the defaulting promisor and the available damage remedy affords inadequate protection to the promisee's contractual entitlement, the promisee has a claim to restitution of the profit realized by the promisor as a result of the breach. Restitution by the rule of this section is an alternative to a remedy in damages.
>
> (2) A case in which damages afford inadequate protection to the promisee's contractual entitlement is ordinarily one in which damages will not permit the promisee to acquire a full equivalent to the promised performance in a substitute transaction.
>
> (3) Breach of contract is profitable when it results in gains to the defendant (net of potential liability in damages) greater than the defendant would have realized from performance of the contract. Profits from breach include saved expenditure and consequential gains that the defendant would not have realized but for the breach, as measured by the rules that apply in other cases of disgorgement (§ 51(5)).

Second, under Restatement (Third) of Restitution and Unjust Enrichment § 48 (2011), "[i]f a third person makes a payment to the defendant to which (as between claimant and defendant) the claimant has a better legal or equitable right, the claimant is entitled to restitution from the defendant as necessary to prevent unjust enrichment."

Under Oregon law, it is proper to plead both a breach of contract claim and an unjust enrichment claim based on the same facts. *See Kashmir Corp. v. Patterson*, 43 Or. App. 45, 48, 602 P.2d 294 (1979), *aff'd*, 289 Or. 589, 616 P.2d 468 (1980) ("It is proper for a party to plead counts in contract and in Quantum meruit covering the same course of events in complaint.");

Page 28 – **PLAINTIFFS' OMNIBUS RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

*Mil-Ray v. EVP Int'l, LLC*, No. 3:19-CV-00944-YY, 2020 WL 3317931, at *10 (D. Or. Mar. 17, 2020), *report and recommendation adopted*, No. 3:19-CV-00944-YY, 2020 WL 3316979 (D. Or. June 18, 2020) ("Thus, a plaintiff may alternatively plead an express contract and quantum meruit, and is not 'required to elect upon which theory plaintiff will rely.'" (quoting *Global Exec. Mgmt. Sols., Inc. v. Int'l Bus. Machs., Corp.*, 260 F. Supp. 3d 1345, 1378 (D. Or. 2017))); *see also Hazelwood Water Dist. v. First Union Mgmt., Inc*., 78 Or. App. 226, 230, 715 P.2d 498 (1986) (quantum meruit is based on unjust enrichment). Of course, Plaintiffs do not seek double recovery, but it is appropriate to plead both claims under Oregon law. Furthermore, such claims are particularly appropriate here, in light of the fact that Defendants dispute that Plaintiffs have properly pled a breach of contract claim.

Nor are Plaintiffs' equitable claims duplicative of their breach of contract claims. As a result of the Preferred Conversion, Plaintiffs received less than they were entitled to and Defendants received more than they were entitled to. Plaintiffs' equitable claims seek to require Defendants to disgorge Defendants' profits from the unauthorized transactions, by which they have been unjustly enriched, and to hold the surplus shares taken by Defendants in a constructive trust and subject to a lien for the benefit of Plaintiffs and the Class. Complaint ¶ 73.

For these reasons, Plaintiffs have properly alleged a claim for unjust enrichment, constructive trust, and equitable lien against the Preferred Member Defendants.

### D.      Plaintiffs State an Actionable Claim for the Breach of Good Faith and Fair Dealing (Third Claim for Relief).

Under Oregon law, "[i]n general, every contract has an obligation of good faith in its performance and enforcement under the common law." *Klamath Off-Project Water Users, Inc. v. Pacificorp*, 237 Or. App. 434, 445, 240 P.3d 94 (2010) (citing *Elliott v. Tektronix, Inc.,* 102 Or. App. 388, 396, 796 P.2d 361, *rev. den.,* 311 Or. 13, 803 P.2d 731 (1990)); *see also Hampton Tree Farms, Inc. v. Jewett*, 320 Or. 599, 615, 892 P.2d 683 (1995) ("The law imposes a duty of good faith and fair dealing in the performance and enforcement of every contract.").

Page 29 – **PLAINTIFFS' OMNIBUS RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

Although the duty "cannot contradict an express contractual term, nor otherwise provide a remedy for an unpleasantly motivated act that is permitted expressly by the contract," *Zygar v. Johnson,* 169 Or. App. 638, 645, 10 P.3d 326 (2000), *rev. den.,* 331 Or. 584, 19 P.3d 356 (2001), "a party may violate its duty of good faith and fair dealing without also breaching the express provisions of a contract," *Elliott*, 102 Or. App. at 396. Such a claim "may be pursued independently of a claim for breach of the express terms of the contract." *McKenzie v. Pacific Health & Life Ins. Co.,* 118 Or. App. 377, 381, 847 P.2d 879 (1993), *rev. dismissed,* 318 Or. 476, 869 P.2d 859 (1994). The duty of good faith and fair dealing "serves to effectuate the objectively reasonable expectations of the parties" and its purpose "is to prohibit improper behavior in the performance and enforcement of contracts." *Klamath Off-Project Water Users, Inc.*, 237 Or. App. at 445; *see Whistler v. Hyder,* 129 Or. App. 344, 348, 879 P.2d 214, *rev. den.,* 320 Or. 453, 887 P.2d 792 (1994) ("The law imposes a duty of good faith and fair dealing in contracts to facilitate performance and enforcement in a manner that is consistent with the terms of the contract and that effectuates the reasonable contractual expectations of the parties.").

The Oregon LLC Act expressly requires members to comport with the duty of good faith and fair dealing. ORS 63.155(4) ("A member shall discharge the duties to a member-managed limited liability company and the other members under this chapter or under any operating agreement of the limited liability company and exercise any rights consistent with the obligation of good faith and fair dealing."). Referring to that provision, the Oregon LLC Act also expressly prohibits LLCs from "[e]liminat[ing] completely the obligation of good faith and fair dealing" from an LLC's articles of organization or operating agreement, even though "the articles of organization or an operating agreement may determine the standards by which performance of the obligation of good faith and fair dealing is to be measured, if the standards are not unconscionable." ORS 63.155(10)(c).

NuScale argues that Plaintiffs' claim for breach of good faith and fair dealing fails because any such claim is subsumed by Plaintiffs' breach of contract claim and Defendants did

Page 30 – **PLAINTIFFS' OMNIBUS RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

not breach the contracts. NuScale Motion at 30–33. NuScale cites to *Gibson v. Douglas Cnty.*, 197 Or. App. 204, 217, 106 P.3d 151 (2005) for the proposition that "the duty of good faith and fair dealing—which serves to effectuate the objectively reasonable expectations of the parties— may be implied as to a disputed issue only if the parties have not agreed to an express term that governs that issue; indeed, the reasonable expectations of the parties are irrelevant if the parties have agreed to an express term governing the issue," and complains that "Plaintiffs are conflating a breach of contract claim with a breach of the covenant of good faith and fair dealing" because the Complaint alleges that Plaintiffs "'had objectively reasonable *contractual expectations* that Defendants would *adhere to the plain language of the contracts* in connection with any recapitalization of the Company.' (Complaint ¶ 78) (emphasis added)." NuScale Motion at 31.

Plaintiffs will not repeat their arguments refuting Defendants' challenges to the breach of contract claims. But it is clear from context that the court in *Gibson* was restating the adage that the duty of good faith and fair dealing cannot "contradict an express contractual term." *See Gibson,* 197 Or. App. at 217 (citing *Zygar,* 169 Or. App. at 646 for this proposition). NuScale cites to no express contractual term that contradicts Plaintiffs' claim for the breach of the duty of good faith and fair dealing; rather, Plaintiffs' claim is merely *informed* by the contracts at issue in this case, as all claims for the breach of the duty of good faith and fair dealing related to contracts must be. Under Oregon law, a claim for breach of good faith and fair dealing is independent of a claim for breach of contract, and each party to a contract owes the other parties the duty of good faith and fair dealing. *See Klamath Off-Project Water Users, Inc.*, 237 Or. App. at 445; *McKenzie,* 118 Or. App. at 381.

Plaintiffs properly allege that NuScale breached the contract, and also breached the duty of good faith and fair dealing. Among other things, Plaintiffs allege that Defendants acted in bad faith and did not deal fairly with the Common Members and Option Holders in the performance of the contract. Complaint ¶¶ 5, 43, 55. Plaintiffs allege that Defendants' actions in converting

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

the Preferred Units at a ratio disproportionately favorable to the Preferred Members were contrary to Defendants' promises and statements to NuScale's employees that the Common Units would achieve parity with the Preferred Units on reaching a sufficient enterprise value, which value was reached at the relevant time. *Id.* ¶ 5. Plaintiffs also allege that Defendants did not disclose the disproportionate conversion at the time they announced the transactions. *Id.* ¶ 43. When Plaintiffs informed NuScale that they intended to seek legal recourse, NuScale threatened to report Plaintiffs for insider trading if they exercised certain rights that all holders of Units were authorized to exercise. *Id.* ¶ 55. These facts address bad faith and fair dealing.

With respect to the Preferred Member Defendants' arguments that they are protected by exculpatory provisions in the 5th Operating Agreement, in addition to the arguments previously made in Section IV.A.3., *supra*, even if the exculpatory provisions in the 5th Operating Agreement did fully eliminate the duty of good faith and fair dealing from the contract, such provisions would be illegal and unenforceable under the Oregon LLC Act, which expressly requires members of an LLC to comport with the duty and prohibits LLCs from eliminating that duty from their operating agreements. *See* ORS 63.155(4), 10(c).

Finally, in the context of a breach of the duty of good faith and fair dealing argument, it is not clear what Fluor means when it argues it owed no obligations to Plaintiffs. *All* parties to contracts owe the duty of good faith and fair dealing under Oregon law. *Klamath Off-Project Water Users*, 237 Or. App. at 445; *Hampton Tree Farms, Inc. v. Jewett*, 320 Or. at 615. Defendants cannot escape this black letter law by arguing the 5th Operating Agreement somehow excused them their breach of the duty of good faith and fair dealing.

Accordingly, the Preferred Member Defendants' motions to dismiss the Third Claim, for breach of the duty of good faith and fair dealing, should be denied.[13]

---

[13] For clarity, Plaintiffs do not allege a claim for breach of the duty of good faith and fair dealing against the Preferred Member Defendants based on the Unit Option Agreements or the Option Plan. Plaintiff Jack A. Bailey does not allege claims based on the 5th Operating Agreement. Plaintiffs will amend the Complaint to make these clarifications, if necessary.

Page 32 – **PLAINTIFFS' OMNIBUS RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

# V.     CONCLUSION

For these reasons, and based upon the allegations of the Complaint, Plaintiffs request that the Court deny the Defendants' Motions to Dismiss, with the exception that Plaintiffs concede Defendants' motions as to the First Claim (Declaratory Judgment), reserving the right to request leave to assert the claim following discovery.

DATED this 17th day of January, 2023.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.


By: s/Timothy S. DeJong
    **Timothy S. DeJong**, OSB No. 940662
    **Keith A. Ketterling**, OSB No. 913368
    **Lydia Anderson-Dana**, OSB No. 166167

209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone:      (503) 227-1600
Facsimile:      (503) 227-6840
Email:          tdejong@stollberne.com
                kketterling@stollberne.com
                landersondana@stollberne.com

**Attorneys for Plaintiffs**

Page 33 – **PLAINTIFFS' OMNIBUS RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**