UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

JOHN J. SURINA, JR., trustee of the Elizabeth Sophia Surina Trust and Nicholas William Surina Trust; BRUCE LANDREY, an individual; PAUL LORENZINI, an individual; RICHARD SANDVIK, an individual; EDWARD G. WALLACE, an individual; JACK A. BAILEY, an individual; GARY CARL BARBOUR, an individual; PAUL D. BENNETT, an individual; JAMES E. CARTER, an individual; CHARLES MARCINKIEWICZ, trustee of the Charles & Kathleen Marcinkiewicz Trust; MICHAEL S. MCGOUGH, an individual; CHRISTOPHER RUNCKEL, an individual; and JOE CLAYTON TURNAGE, an individual; on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

NUSCALE POWER, LLC, an Oregon limited liability company; FLUOR ENTERPRISES, INC., a California corporation; JAPAN NUSCALE INNOVATION, LLC, a Delaware limited liability company; SARGENT & LUNDY NUHOLDINGS, LLC, an Illinois limited liability company,

Defendants.

Case No. 3:22-cv-01410-YY

FINDINGS AND RECOMMENDATIONS

YOU, Magistrate Judge.

**FINDINGS**

Plaintiffs have brought this putative class action suit alleging that defendants "abuse[d] their control" of defendant NuScale Power, LLC by amending the company's operating

agreement and restructuring the company's equity to facilitate a public offering of the company's shares and wrongly enrich themselves at plaintiffs' expense. Compl. ¶ 1, ECF 1. Currently pending is plaintiffs' Motion to Amend Complaint (ECF 63). Plaintiffs seek to add a breach of contract claim against all defendants "for converting Preferred Units to Common Units at a rate greater than the Common Equivalent Ratio allowed by the 5th Operating Agreement," and a claim for breach of the duty of good faith and fair dealing against defendants Flour Enterprises, Inc., Japan NuScale Innovation, LLC, and Sargent & Lundy NuHoldings, LLC (collectively "Preferred Member Defendants"). Mot. Amend 1, ECF 63.[1] The proposed amended complaint also drops several claims that were dismissed as a result of the court's order granting in part defendants' motions to dismiss. *See* Order (Nov. 14, 2023), ECF 60.

For the following reasons, plaintiffs' motion to amend should be denied.

## I. Legal Standard for Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice requires." When exercising its discretion on a motion to amend, the court should be guided by the underlying purpose of Rule 15(a), which is "to facilitate decisions on merits, rather than on the pleadings or technicalities." *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (citation omitted). Thus, leave to amend is to be granted with "extreme liberality." *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation omitted).

[1] Additional factual background about plaintiffs' claims was detailed in the previous Findings and Recommendations on defendants' motions to dismiss. *See* ECF 53.

Leave to amend is not, however, automatically granted. *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990). The court "may exercise its discretion to deny leave to amend due to undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (simplified). Prejudice is the most important factor. *Eminence Capital*, 316 F.3d at 1052. Futility may support denial of a motion to amend if it is clear that the pleading, as amended, is subject to dismissal and cannot be cured by amendment. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (citations omitted). "Leave to amend is warranted if the deficiencies can be cured with additional allegations that are consistent with the challenged pleading and that do not contradict the allegations in the original complaint." *Id*. (citation and internal quotation marks omitted).

**II. Discussion**

As an initial matter, defendants Flour and Japan NuScale observe that the court's prior order on their motions to dismiss, in which all claims against them were dismissed, did not specify whether the dismissal was with or without prejudice, and argue that it should be viewed as a dismissal with prejudice. *See* Flour and S&L Resp. 5–6, ECF 68; Def. Japan NuScale Resp. 5–7, ECF 69. In responding to a motion to dismiss, it is often the case, as happened here, that the plaintiff does not make a specific showing regarding how a complaint might be amended to state a claim for relief. *See* Pl. Resp. 4, ECF 37. It would be improper, and potentially prejudice the defendants and waste resources, to simply grant the plaintiff broad leave to amend as a matter of course without any indication as to what the proposed amendments might be. On the other hand, the Ninth Circuit has unequivocally directed district courts to grant leave to amend with extreme

liberality and has regularly reversed dismissals with prejudice that it sees were premature. *See, e.g.*, *Reimer v. Snohomish Cnty. Fire Dist. No. 1*, 853 F. App'x 59, 61 (9th Cir. 2021); *Scott v. Macy's*, 693 F. App'x 592, 593 (9th Cir. 2017) ("[D]ismissal without leave to amend was premature because it is not absolutely clear that the deficiencies could not be cured by amendment.). Given this tension, it is common that in the early stages of a case, a motion to dismiss might be resolved without specific instructions as to whether the plaintiff is granted leave to amend because the issue is not yet ripe for adjudication and it is unclear, for example, whether any proposed amendment is futile such that leave to amend should not be allowed.

Moreover, the court specifically clarified via email, after the order on the motions to dismiss was entered, that plaintiffs could seek leave to amend the complaint. *See* Reply 2, ECF 70. The court's directive that any proposed amended complaint should conform to the order of dismissal was intended to communicate to plaintiffs that they should consider whether they could plead any additional facts to support claims that had been dismissed and if not, they should strike those claims from any proposed amended complaint for consideration on a motion for leave to amend. *Id.* Plaintiffs have done exactly that here; they abandoned some claims, and attempted to clarify the allegations for others.

The cases cited by Flour and Japan NuScale are inapposite. *See* Def. Flour and S&L Resp. 5 (citing *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002)) (additional citations omitted); Def. Japan NuScale Resp. 5, ECF 69 (citing *Ziniker v. Waldo*, No. 3:06-cv-01042-ST, 2007 WL 445558, at *2 (D. Or. Feb. 6, 2007)) (additional citations omitted). Those cases primarily address whether a previous dismissal was with or without prejudice for purposes of evaluating whether the plaintiff's later claims were precluded under the doctrine of *res judicata*. There, the court was tasked with evaluating whether a prior claim had been adjudicated on the

merits and, thus, the court was necessarily interpreting the decision of a different court at a different time in a different case. Moreover, the plaintiffs in those cases often indicated through their litigation conduct in the original case that they had abandoned claims by, for example, failing to seek leave to amend after the claims were initially dismissed. *See Stewart*, 297 F.3d at 955–56 (finding plaintiffs' claims in the second lawsuit were barred because plaintiffs did not object to the magistrate judge's recommendation that their claims be dismissed, did not seek leave to amend their complaint, and did not appeal the order dismissing the first case). Obviously, those are not the circumstances here. In responding to defendants' motions to dismiss, plaintiffs alerted the court that they may be able to correct the deficiencies in the complaint with additional allegations. Pl. Resp. 4, ECF 37. This case is in its early stages, and it should not come as a surprise to defendants that plaintiffs are seeking to clarify or restate their allegations in an attempt to state a viable claim after the court found that certain claims were deficient.

**A. New Breach of Contract Claim Against All Defendants**

Plaintiffs seek to assert against all defendants a claim "for breach of contract for converting Preferred Units to Common Units at a rate greater than the Common Equivalent Ratio allowed by the 5th Operating Agreement." Mot. Amend 1, ECF 63. The proposed amended complaint alleges:

> Section 3.1(f)(xi) of the 5th Operating Agreement expressly provided that Preferred Members had the right to convert their Preferred Units into Common Units at the Common Equivalent Ratio specified in the agreement. The 5th Operating Agreement does not allow the Preferred Members to convert their Preferred Units into Common Units at any other ratio.

Proposed First Amended Complaint ¶ 37, ECF 63-1. Defendants NuScale, Flour, and Japan NuScale oppose this proposed amendment on the basis of futility. *See* Def. NuScale Resp. 3, ECF 67; Def. Flour Resp. 6–8, ECF 68; Def. Japan NuScale Resp. 7–8, ECF 69.

"To state a claim for breach of contract under Oregon law, a 'plaintiff must allege the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach and defendant's breach resulting in damage to plaintiff.' " *Arnett v. Bank of Am., N.A.*, 874 F. Supp. 2d 1021, 1029 (D. Or. 2012) (quoting *Slover v. Oregon State Bd. of Clinical Soc. Workers,* 144 Or. App. 565, 570 (1996)); *see also Pranger v. Oregon State Univ.*, 672 F. Supp. 3d 1088, 1094 (D. Or. 2023). Whether plaintiffs' proposed amended complaint states a breach of contract claim against the defendants based on the so-called "Preferred Conversion Ratio" is a question of contractual interpretation, which is subject to a three-step inquiry under Oregon law. *Yogman v. Parrott*, 325 Or. 358, 361 (1997); *see also Ness & Campbell Crane, Inc. v. Kleppe*, No. 3:17-cv-01865-HZ, 2018 WL 1702049, at *3 (D. Or. Apr. 5, 2018). First, the court must determine whether the disputed provision is ambiguous, which is a question of law. *Ross Dress for Less, Inc. v. Makarios-Oregon, LLC*, 210 F. Supp. 3d 1259, 1263 (D. Or. 2016). A provision is ambiguous if it can "reasonably be given more than one plausible interpretation." *Id*. (quoting *Williams v. RJ Reynolds Tobacco Co*., 351 Or. 368, 379 (2011)). The court must, if possible, construe the contract in a way that gives effect to all of its provisions, and must not "insert what has been omitted, or . . omit what has been inserted." *Id*. (quoting O.R.S. 42.230; *Yogman,* 325 Or. at 361). If the provision is clear and unambiguous, the court applies the contractual term to the facts. *Id*.

Section 3.1(f)(xi) provides as follows:

> Conversion. Subject to Section 4.1(e), each Preferred Unit shall be convertible, at the option of the Preferred Member holding such Preferred Unit, at any time and from time to time, and without the payment of additional consideration by the Preferred Member, into a number of Common Units equal to the Common Equivalent Ratio in effect at the time of conversion. In the event of a Qualified Public Offering or a Liquidity Event, the right to convert each Preferred Unit pursuant to this Section 3.1(f)(xi) shall terminate at the close of business on the last full day preceding the date fixed for the issuance of common shares upon conversion of Units pursuant to Section 9.4(b) or the payment of any amounts distributable on a Liquidity Event to the Preferred Members.

Goldberg Decl., Ex. 1 at 29, ECF 19-1.[2] It appears undisputed that the Common Equivalent Ratio under the 5th Operating Agreement was 1:1, meaning that the "Preferred Members" who held "Preferred Units"—including defendants Flour and Japan NuScale—could convert their preferred units to common ones on a 1:1 basis. Def. NuScale Resp. 3, ECF 67; *see also* Def. Japan NuScale Resp. 7, ECF 69. The problem, according to plaintiffs, arose when the company, defendant NuScale, adopted the 6th Operating Agreement and changed the Common Equivalent Ratio to one that was more favorable to Preferred Members, allowing them to convert their preferred units using the new Preferred Conversion Ratio at approximately a 1.56:1 to a 1.63:1 basis. *See* Findings and Recommendations (Aug. 3, 2023) 6, ECF 53 (explaining details of 5th and 6th Operating Agreement); *see also* Goldberg Decl., Ex. 2., Section 2.1(c), ECF 19-2 at 259.

Plaintiffs "allege that no provision of the contract permits a conversion on the terms utilized for the Preferred Conversion" and that defendants do not identify any such provision, and thus "the contract can plausibly be read to impose a duty to convert only on the specified terms or with the consent of the Common Members[.]" Pl. Reply 4–5, ECF 70. But defendants have identified several contractual provisions that establish plaintiffs' proposed claim fails as a

[2] Under Section 4.1(e), preferred units that were converted to common units still maintained the same distribution rights as other non-converted preferred units. Goldberg Decl., Ex. 1 at 35, ECF 19-1.

matter of law. Section 5.1(a) grants the company's Board broad authority to take any actions unless proscribed by statute. Goldberg Decl., Ex. 1 at 38, ECF 19-1. One specific limitation on the Board's authority is provided in Section 5.1(d)(xiv), which states that any amendment to the 5th Operating Agreement must be approved by a majority of the Preferred Members. *Id.* at 39. Another provision in Section 5.1, subsection (d)(ix), similarly requires a majority vote of the Preferred Members to "amend any of the rights and privileges of the Preferred Units[.]" *Id.* at 40. As plaintiffs recognize, the conversion of preferred units to common units was one such "privilege" or "right" that the Preferred Members enjoyed under the 5th Operating Agreement. *See* Proposed First Am. Compl. ¶ 37, ECF 63-1. Plaintiffs allege that the Preferred Members "voted to amend and replace the 5th Operating Agreement with the 6th Operating Agreement," the company's Board of Managers "adopted the 6th Operating Agreement at a meeting on December 21, 2021" and that the Preferred Conversion Ratio was one of the amendments enacted in the 6th Operating Agreement. *Id.* ¶¶ 44–45, ECF 63-1. Plaintiffs have not, and cannot, allege any term of the 5th Operating Agreement that limited the Board's authority to amend, or the Preferred Members' authority to vote to adopt, the Preferred Conversion Ratio.[3]

Section 14.3 of the 5th Operating Agreement provides that the Agreement "may be amended or modified, or any provision waived, only with the written consent of (a) the Members

---

[3] Plaintiffs' argument that "[i]t is axiomatic that a party can breach a contract by doing something that the contract does not expressly allow" is, apart from being thinly supported by non-binding case law that other courts have declined to follow, beside the point. *See* Reply 4, ECF 70 (citing *Arnett*, 874 F. Supp. 2d at 1030–33); *see also McKenzie v. Wells Fargo Home Mortg., Inc.*, No. 3:11-cv-04965-JCS, 2012 WL 5372120, at *18 (N.D. Cal. Oct. 30, 2012) (disagreeing with *Arnett*); *Cannon v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025, 1042 (N.D. Cal. 2013) ("The Court is not persuaded by the reasoning of *Arnett.*"). The 5th Operating Agreement authorized the company and its board to amend the 5th Operating Agreement subject to certain limitations, and plaintiffs have not identified any such limitation that applies to the Common Equivalent Ratio provision in the 5th Operating Agreement or the Preferred Conversion Ratio in the 6th Operating Agreement.

holding a majority of the votes of the issued and outstanding Common Units and Preferred Units, consenting together as a single class (on an As-Converted Basis) and (b) the Members holding a majority of the Preferred Units consenting as a separate class[.]" Goldberg Decl., Ex. 1 at 69, ECF 19-1. As explained at length in the previous Findings & Recommendations, Section 14.3(aa) further provides that amendments to particular sections of the 5th Operating Agreement, specifically Sections 3.1(g), 4.1(a)(iii), 4.1(a)(iv), 4.1(a)(v), or 12.2(c), or clause (aa) of Section 14.3, also required (in most circumstances) a majority vote of Common Members. Goldberg Decl., Ex. 1 at 69–70, ECF 19-1. Plaintiffs allege that "Section 3.1(f)(xi) of the 5th Operating Agreement expressly provided that Preferred Members had the right to convert their Preferred Units into Common Units at the Common Equivalent Ratio specified in the agreement," and that the adoption of the Preferred Conversion Ratio via the 6th Operating Agreement thus breached Section 3.1(f)(xi). But plainly, Section 3.1(f)(xi) is not one of the provisions that required, under Section 14.3(aa) a separate vote of the Common Holders.

The difference between plaintiff's proposed claim here and the breach of contract claim asserted against NuScale based on the 5th Operating Agreement's voting rights provision at Section 14.3 that the court previously ruled was not subject to dismissal[4] is that certain portions of the 6th Operating Agreement seemed to implicate plaintiffs' voting rights as holders of common units, and there was at least one plausible interpretation of the 5th Operating Agreement that a separate vote of the common unit holders was necessary for any such amendment.[5] Here, by contrast, Section 14.3 of the 5th Operating Agreement does not require the company to obtain

---

[4] *See* Findings and Recommendations (Aug. 3, 2023) 9–14, ECF 53.

[5] Nothing here should be construed as a ruling on or a suggestion about the merits of plaintiffs' breach of contract claim based on the voting rights provision of Section 14.3 of the 5th Operating Agreement against defendant NuScale.

a separate vote of the common unit holders to amend the provisions of the 5th Operating Agreement relating to the Common Equivalent Ratio or the rights of Preferred Members. In short, plaintiffs' breach of contract claim based on the adoption of the Preferred Conversion Ratio is futile because plaintiffs have not identified any provision of the 5th Operating Agreement that limited the NuScale's or the Preferred Member Defendants' power to do so.

### B. Breach of Duty of Good Faith and Fair Dealing Against the Preferred Member Defendants

Plaintiffs seek to add a claim for breach of the duty of good faith and fair dealing against the Preferred Member Defendants based on the conversion of the "Preferred Units to disproportionate numbers of Common Units." Mot. Amend 7, ECF 63. Defendants Flour and Japan NuScale oppose this proposed amendment based on futility. *See* Def. Flour Resp. 8, ECF 68; Def. Japan NuScale Resp. 8, ECF 69.

Oregon "law imposes a duty of good faith and fair dealing in the performance and enforcement of every contract." *Hampton Tree Farms, Inc. v. Jewett*, 320 Or. 599, 615 (1995). The purpose of the duty "is to prohibit improper behavior in the performance and enforcement of contracts, and to ensure that the parties will refrain from any act that would have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Klamath Off-Project Water Users, Inc. v. Pacificorp*, 237 Or. App. 434, 445 (2010) (internal quotation marks omitted). The duty of good faith "focuses on the agreed common purpose and the justified expectations of the parties, both of which are intimately related to the parties' manifestation of their purposes and expectations in the express provisions of the contract." *Id.* (internal quotation marks omitted). It serves to "effectuate the objectively reasonable expectations of the parties," and thus the duty cannot "contradict an express contractual term, nor otherwise provide a remedy for an unpleasantly motivated act that is permitted expressly by the contract." *Id.* Put differently,

"a party invoking an express contractual right does not, merely by doing so, violate the duty of good faith." *Stevens v. Foren*, 154 Or. App. 52, 59 (1998).

As described above, Section 5.1(d)(ix) of the 5th Operating Agreement expressly empowered the Preferred Members, including Flour and Japan NuScale, to vote on amendments to the operating agreement pertaining to "the rights and privileges of the Preferred Units[.]" Goldberg Decl., Ex. 1 at 40, ECF 19-1. The right to convert preferred units to common units was one such privilege. Accordingly, plaintiffs could not reasonably expect that the Preferred Members would not change the conversion ratio applicable to preferred units. *See Grants Pass Imaging & Diagnostic Ctr., LLC v. Marchini*, 270 Or. App. 127, 139–40 (2015) (affirming grant of defendant's motion for judgment on the pleadings on bad faith claim brought by LLC against former member for breaching noncompete clause of operating agreement because the term "restrict[ed] only current members from competing with [the plaintiff]" and did not apply to former members); *W. Prop. Holdings, LLC v. Aequitas Cap. Mgmt., Inc.*, 284 Or. App. 316, 329 (2017) ("[T]he terms of the [contract] gave defendant the express right to determine whether it was appropriate to foreclose upon a default . . . or whether other remedies for enforcement of the loan documents should be pursued. Therefore, plaintiff could not reasonably expect that defendant would account for plaintiff's interests or preferences in deciding whether to foreclose."); *Thomas v. OneWest Bank, FSB*, No. 6:10-cv-06234-AA, 2011 WL 3585042, at *8 (D. Or. Aug. 15, 2011) (dismissing breach of duty of good faith claim because although plaintiffs "allege[d] they had a reasonable expectation that their monthly payment would not increase until July 1, 2012, . . . the terms of the Amended Note discredit the reasonableness of that expectation").

Furthermore, as explained in the previous Findings and Recommendations regarding plaintiffs' original bad faith claim, "the 5th Operating Agreement expressly empowered the preferred unit holders to vote on amendments to the Company's operating agreement. Section 14.8 specifically provides that members exercising their 'rights, powers or privileges,' which for the Preferred Member Defendants included the right to vote on amendments to the operating agreement, 'shall not be deemed to constitute a lack of good faith or unfair dealing.' " Findings and Recommendations (Aug. 3, 2023) 25, ECF 53; *see also* Goldberg Decl., Ex. 1 at 71, ECF 19-1; *Uptown Heights Assocs. Ltd. P'ship v. Seafirst Corp.*, 320 Or. 638, 645 (1995) ("The party invoking its express, written contractual right does not, merely by so doing, violate its duty of good faith.").

## RECOMMENDATIONS

Plaintiffs' Motion to Amend Complaint [63] should be denied because the proposed amendments are futile.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due Friday, June 07, 2024. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

//

//

//

**NOTICE**

These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED May 22, 2024.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge